JUSTICE COTTER
delivered the Opinion of the Court.
¶1 James Ralph Hendershot III (Hendershot) was charged with felony aggravated assault, felony assault with a weapon, and misdemeanor partner or family member assault after a physical altercation with his wife, Denise. As a result of these charges, the Twenty-First Judicial District Court, Ravalli County, revoked Hendershot’s deferred sentence for a previous felony theft conviction and sentenced him to ten years at Montana State Prison (MSP) with five years suspended. A jury subsequently found him guilty of the three assault charges. He was then sentenced to ten years with the Department of Corrections (DOC) with five suspended. This sentence was to run consecutively to his theft sentence. During his criminal assault proceedings, Hendershot requested a new attorney. The District Court denied his request. He appeals the District Court’s refusal to grant his request for a new attorney. He also appeals the sentence requirement obligating him to pay court-appointed counsel costs and jury costs. We reverse and remand.
ISSUE
¶2 The dispositive issue on appeal is whether the District Court abused its discretion in refusing Hendershot’s request for new counsel.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On June 9, 2003, Hendershot and his wife Denise had a violent physical altercation in which Denise was injured and required medical evaluation and treatment. After an investigation, the State charged Hendershot, on or around June 24, 2003, with felony aggravated assault, felony assault with a weapon, and misdemeanor partner or family member assault The District Court appointed public defender Mark McLaverty (McLaverty) to represent Hendershot. At his initial court appearance on June 25 with McLaverty, Hendershot pled not guilty to all charges.
¶4 Hendershot and Denise were on felony probation for theft at the time of the assault incident. As a result of the charges involved in this *166 case, the State moved to revoke Hendershot’s prior probation. McLaverty was also appointed to represent him in the revocation proceeding. At the revocation hearing on July 16,2003, attorney Mike Montgomery (Montgomery), an associate with McLaverty’s law firm, appeared with Hendershot because McLaverty was having knee surgery.
¶5 At the close of the probation revocation hearing, the District Court determined that Hendershot violated his probation. The prosecutor asked the court to commit Hendershot to DOC for 10 years with five suspended, and Montgomery, on behalf of Hendershot, agreed with the prosecutor’s recommendation. The District Court nonetheless followed the sentencing recommendations of Hendershot’s probation officer and sentenced Hendershot to MSP for 10 years, with five suspended, for felony theft.
¶6 In a letter to Judge Langton dated July 17, 2003, Hendershot complained he had been inadequately represented at his probation revocation hearing. He stated that Montgomery mistakenly thought the revocation hearing was Hendershot’s initial appearance; therefore, he instructed Hendershot to say nothing and Hendershot complied. Hendershot further noted in the letter that Montgomery failed to ask questions of the witnesses and made no mention of Hendershot’s mental disorder which Hendershot believed was “to a large degree ... the cause of the events” resulting in his assault charges. Hendershot requested a new hearing or a sentence change. The District Court forwarded a copy of Hendershot’s letter to McLaverty but did not respond to Hendershot’s request.
¶7 On July 25, 2003, McLaverty attended an omnibus hearing with respect to the instant case. He signed an omnibus hearing memorandum stating that Hendershot would assert the affirmative defense of justifiable use of force, as well as generally deny the charges. A status hearing was held on September 17, 2003. At that time, McLaverty informed the Court that a plea agreement had been reached. Based on this representation, the District Court set a change of plea hearing.
¶8 For the scheduled change of plea hearing held on October 1,2003, Hendershot was transported from MSP to the Ravalli County Detention Center in Hamilton, Montana to attend the hearing. At the hearing McLaverty informed the court that Hendershot no longer wished to change his plea but in fact wished to proceed to trial. McLaverty also asked that Hendershot remain in jail in Hamilton pending trial so he would be able to communicate with counsel more *167 easily than if he were returned to the prison in Deer Lodge. The District Court granted this request. The trial was scheduled for December 8, 2003.
¶9 Between the revocation hearing of July 16,2003, and September 11, 2003, Denise undertook an aggressive letter-writing campaign to Judge Langton seeking a reduction of Hendershot’s theft sentence. She wrote at least seven letters to the court, most of which are in the record, and all of which asked the District Court to reconsider its sentence, primarily based on Hendershot’s ill health. She maintained that her injuries were not serious, and that not all of them were inflicted by her husband. She asked the court to place Hendershot on extended probation rather than prison time. On September 26, 2003, Denise wrote a letter to Montana Attorney General Mike McGrath, in which she claimed that prosecutor Geoff Mahar had threatened her with revocation of her probation if she did not answer questions to his satisfaction during Hendershot’s revocation hearing. She claims she wanted to tell “the truth about what happened on 6-9-03” but neither Mahar nor the court gave her that opportunity at the hearing.
¶10 Subsequently, on October 27, 2003, Hendershot wrote a letter to the District Court requesting a new attorney. He complained that: (1) McLaverty had done little or nothing on his behalf; (2) McLaverty knew that Mahar had threatened Denise before the revocation hearing and that Denise had lied about the incident but McLaverty had not acted on this evidence; (3) McLaverty had not filed a petition for rehearing on Hendershot’s behalf as Hendershot had requested, and (4) McLaverty was incompetent. He also expressed his displeasure with Montgomery, whom he stated was incompetent, was unprepared for the revocation hearing, and had not asked his wife questions that could have elicited a more truthful explanation of the events.
¶11 The District Court set a hearing on Hendershot’s request for new counsel for November 12, 2003. At the hearing, Montgomery again appeared instead of McLaverty. Hendershot repeated his complaints regarding what had occurred at the probation revocation hearing. He stated that Denise was coerced into falsely testifying against him, that some of her injuries were either work-related or self-inflicted, and that McLaverty knew but failed to act on this information. He claimed that Denise told McLaverty prior to the probation revocation hearing that the State threatened her, but that she did not tell him (Hendershot) until after he went to prison.
¶12 When asked by the court if he wanted to respond to Hendershot’s allegations, Montgomery, on behalf of McLaverty, replied that as *168 public servants, they try to give the best representation to their clients but that frequently the clients do not like to hear what they have to say. Montgomery disagreed with Hendershot’s characterizations of his performance, but concluded that “communication between me, my office, and my client has broken down to such an irreparable state that we wouldn’t be able to go forward from this point on if the Court should decide to keep us on. For that reason, on behalf of McLaverty & Associates, Mark McLaverty and myself, we ask to be removed and discharged from our duties.”
¶13 Ravalli County Attorney George H. Corn represented the State at the hearing. He contended that Hendershot engineered his complaint regarding McLaverty to frustrate the prosecution. Corn asked that the District Court take note that Hendershot failed to request new counsel for three and a half months after he was supposedly dissatisfied. Corn also asked that Hendershot’s request for new counsel be granted only if he waived his right to a speedy trial.
¶14 When the District Court asked why he waited so long to request a different lawyer, Hendershot explained that while he had learned in September that his wife had lied during the revocation hearing, he had worked since that time trying to get McLaverty to represent him vigorously. He said he had written McLaverty a letter requesting a visit, but McLaverty visited with him only once over a period of several months, that being on the morning of October 1, 2003. As an example of McLaverty’s ineffective representation, Hendershot claimed that McLaverty scheduled the October 1, 2003, change of plea hearing without first establishing that Hendershot desired to plead guilty.
¶ 15 Upon further inquiry by the court, Hendershot acknowledged that the appointment of new counsel would require a delay in the trial, but he refused to waive his right to a speedy trial. He said he would need advice of counsel before making such a determination.
¶16 The District Court denied Hendershot’s request to appoint a different lawyer stating:
I guess where I’m at here, Mr. Hendershot, is I don’t find your allegations particularly credit worthy and I don’t find you a particularly credible person and I think your complaints, particularly the timing of your complaints, is motivated more by procedural gamesmanship than true dissatisfaction with your attorney. I respect Mr. Montgomery’s statement here of your allegations of damage to the fabric of your attorney-client relationship with him, but that’s something that you’ve caused. I don’t think it’s been caused by your attorneys.
*169 If you’re unwilling to waive your right to a speedy trial, then I have an obligation to see that you get one. So I’m going to deny your attorney’s request to be relieved and deny your request for a change of attorney, and this will remain set for the pretrial conference on November 14 and the trial as scheduled.
It is from this denial of his request for new counsel that Hendershot appeals.
¶17 Subsequently, one week before the scheduled trial, Hendershot wrote a letter to the District Court requesting a continuance, explaining that he had retained private counsel and was prepared to sign a waiver of speedy trial. The District Court did not receive this letter until immediately before the trial began. The court denied this request.
¶18 Hendershot’s jury trial was held on December 8 and 9,2003. The jury found him guilty of all three assault charges. In addition to various costs and fines, the District Court sentenced Hendershot to ten years with DOC, five years suspended. This sentence was to run consecutive to Hendershot’s theft sentence.
STANDARD OF REVIEW
¶19 Absent an abuse of discretion, this Court will not overrule a district court’s ruling on a request for substitution of counsel, which is within the sound discretion of the district court. State v. Gallagher, 2001 MT 39, ¶ 4, 304 Mont. 215, ¶ 4, 19 P.3d 817, ¶ 4 (Gallagher II). An abuse of discretion has occurred only if the district court “acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice.” Gallagher II, ¶ 4 (quoting Groves v. Clark, 1999 MT 117, ¶ 25, 294 Mont. 417, ¶ 25, 982 P.2d 446, ¶ 25).
DISCUSSION
¶20 Did the District Court abuse its discretion in refusing Hendershot’s request for new counsel?
¶21 Hendershot argues that he made seemingly substantial complaints concerning McLaverty’s representation, including but not limited to McLaverty’s failure to appear at the revocation hearing, his failure to respond to Hendershot’s attempts at correspondence, and his meeting with Hendershot only once in the five months McLaverty represented him. He pointed out that on this occasion, McLaverty erroneously informed the court that Hendershot intended to plead guilty when in fact such a plea had never been discussed between *170 them. He also argues that McLaverty failed to appear at the hearing scheduled to address Hendershot’s request for new counsel. Hendershot further maintains that the District Court improperly failed to assess McLaverty’s representation of him at the November 12, 2003, hearing. Hendershot also asserts that his request for new counsel was timely, and that the District Court should have focused on his communication breakdown with McLaverty rather than the timeliness of the request.
¶22 The fundamental right to effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and Article II, Section 24 of the Montana Constitution. State v. Garcia, 2003 MT 211, ¶ 12, 317 Mont. 73, ¶ 12, 75 P.3d 313, ¶ 12. The right to the effective assistance of counsel ensures the ability of the accused to receive a fair trial. Gallagher II, ¶ 7 (citing Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)). In Strickland, the United States Supreme Court established a two-part test to determine when counsel is ineffective: First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.... Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Generally, the defendant must establish both parts of the test to prevail. Wilson v. State[1], 1999 MT 271, ¶ 12, 296 Mont. 465, ¶ 12, 989 P.2d 813, ¶ 12 (citing State v. Jones, 278 Mont. 121, 133, 923 P.2d 560, 567 (1996)). However, in some cases counsel’s performance is so deficient a presumption of ineffectiveness arises and the second part of the test becomes unnecessary. Wilson, ¶ 12 (citing United States v. Cronic, 466 U.S. 648, 660, 104 S. Ct. 2039, 2047 (1984)). “Only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel’s actual performance at trial.” Wilson, ¶ 12.
¶23 It is within the sound discretion of the district court to rule on requests for appointment of new counsel. State v. Gallagher, 1998 MT 70, ¶ 10, 288 Mont. 180, ¶ 10, 955 P.2d 1371, ¶ 10 (Gallagher I). When a defendant alleges ineffective assistance of counsel, the district court *171 must determine if the complaints are substantial by making an adequate initial inquiry into the nature of the complaints. Gallagher I, ¶ 15. The district court is required to hold a hearing to address the validity of the complaints if it concludes that the defendant has presented seemingly substantial complaints regarding counsel. Gallagher I, ¶ 15.
¶24 At a hearing inquiring into complaints against counsel, it is incumbent upon the defendant to present material facts establishing a total lack of communication. Bare unsupported allegations are insufficient to meet this burden. Gallagher II, ¶ 10. At such a hearing:
A trial court’s duty, when considering a motion for substitution of counsel, is to make adequate inquiry into a defendant’s complaint and to determine whether a conflict is so great as to result in a total lack of communication. State v. Morrison (1993), 257 Mont. 282, 285, 848 P.2d 514, 516. If the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant’s right to effective assistance of counsel. United States v. Moore (9th Cir.1998), 159 F.3d 1154, 1158 (citing Brown v. Craven (9th Cir. 1970), 424 F.2d 1166, 1170).
Gallagher II, ¶ 9.
¶25 We conclude that the record supports Hendershot’s complaints regarding McLaverty. McLaverty did not attend either of the two substantive procedural hearings-Hendershot’s revocation hearing and the hearing on the adequacy of his representation, sending his associate in his stead. While knee surgery is a valid excuse, the fact remains that McLaverty did not answer Hendershot’s request for a visit or go to see him during the months between his incarceration and the October hearing. Additionally, it appears that McLaverty scheduled a change of plea hearing without discussing a change of plea with Hendershot. During the revocation proceedings, McLaverty’s associate Montgomery declined to question either of the prosecution’s witnesses, instructed Hendershot to remain silent, and joined in the State’s recommendation for sentencing. While this latter alleged deficiency occurred during revocation proceedings and not during representation of Hendershot in the instant case, it set the stage for Hendershot’s dissatisfaction of the firm that was appointed to represent him in both proceedings.
¶26 Finally, it is significant that Montgomery told the District Court at the hearing on adequacy of counsel that communications between attorney and client had reached “an irreparable state,” and he actively *172 joined in Hendershot’s request that the attorney-client relationship be severed.
¶27 In Wilson, we determined that a presumption of ineffectiveness can arise upon the establishment of an “irreconcilable conflict” and that once the presumption is established the defendant need not satisfy the second prong of the Strickland test. Wilson, ¶ 17. We also held that when the error alleged is the denial of a timely request for substitution of counsel, “the issue is not whether defendant received effective assistance of counsel at a subsequent trial, but whether his conflict with counsel was sufficient that it required substitution of counsel at the time the request was made.” Wilson, ¶ 25. We noted that “[o]nly by analyzing the District Court’s error in that fashion is the importance of pretrial representation, particularly with regard to trial preparation, and effective plea negotiations, taken into consideration.” Wilson, ¶ 25. Here, McLaverty’s subsequent performance at trial-and indeed, after the November hearing-is irrelevant to the issue before us; rather, we must analyze counsels’ performance and the relationship between Hendershot and his counsel as of the time he requested substitution.
¶28 In United States v. Williams, 594 F.2d 1258 (9th Cir., 1979), which was cited with approval by this Court in Gallagher II, ¶ 13, Williams sought appointment of new counsel a month prior to trial, citing irreconcilable conflicts and lack of communication between him and appointed counsel. His motion and a renewed motion were denied. In finding error, the Ninth Circuit Cotut of Appeals noted that the record demonstrated that “client and attorney were at serious odds and had been for some time.” Williams, 594 F.2d at 1259-60. In reversing Williams’ conviction on the grounds that the district court erred in denying his request for substitution of counsel, the court observed that Williams’ complaints were confirmed by Williams’ counsel; thus, Williams’ prima facie showing of an irreconcilable conflict was made and was in fact undisputed.
¶29 Similarly, Hendershot made repeated complaints about the relationship between him and his counsel. These complaints date back to the day following his probation revocation hearing, and were made well in advance of trial. Additionally, at the hearing, the court heard testimony from Hendershot’s counsel himself to the effect that the attorney-client relationship was in an irreparable state and that the firm “wouldn’t be able to go forward.” Nonetheless, and without evaluating McLaverty’s or Montgomery’s performances, the District Court adopted the arguments of the State, concluding that *173 Hendershot’s allegations were not credit-worthy. In addition, the court inexplicably found that Hendershot had caused the breakdown with his lawyer.
¶30 It is apparent from the record that the conflict between Hendershot and McLaverty arose early in the relationship, during revocation proceedings, demonstrating that “client and attorney were at serious odds ... for some time.” Williams, 594 F.2d at 1259-60. The attorney-client relationship continued to deteriorate until it reached the “irreparable state” described by both client and counsel at the legal representation hearing. Thus, the type of “complete collapse” in the attorney-client relationship envisioned in Gallagher II and the “irreconcilable differences” discussed in Wilson requiring substitution of counsel, were both established by Hendershot and reinforced by Montgomery. For these reasons, we conclude the District Court abused its discretion in denying Hendershot’s timely request for substitution of counsel.
¶31 We note that Hendershot has also appealed the District Court’s order requiring him to pay court-appointed counsel costs and jury costs. In light of our disposition of Issue One, we need not address this issue.
CONCLUSION
¶32 The Judgment of the District Court is reversed. This matter is remanded to the District Court for further proceedings in accordance with this Opinion.
CHIEF JUSTICE GRAY, JUSTICES NELSON and LEAPHART concur.

 Overrruled in part on other grounds by Gallagher II.