

DA 09-0655

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 46

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WAYNE PERCY LINDSEY,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 07-168
Honorable James A. Haynes, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Lisa S. Korchinski,
Assistant Appellate Defender, Helena, Montana; Helena, MT

      For Appellee:

          Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

          George H. Corn, Ravalli County Attorney; William Fulbright,
Deputy County, Hamilton, Montana


Submitted on Briefs:  February 9, 2011

Decided:  March 16, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Wayne Percy Lindsey was convicted of sexual assault pursuant to a plea agreement. He appeals contending that he was deprived of due process in the District Court's proceedings, and that he received ineffective assistance of counsel. We affirm.

## BACKGROUND

¶2 In December, 2007, the State charged Lindsey by information in District Court with sexual intercourse without consent and sexual assault based upon incidents that occurred when he was 16 and 17 years old and his victim was 5 and 6 years old. The incidents took place between May 2005 and May 2006. Lindsey was 18 when charged and jurisdiction to file the charges by information was found in § 41-5-206, MCA.

¶3 Public Defender Carol Johns represented Lindsey, and the case against him progressed through pre-trial proceedings until late in 2008 when the District Court noted that there had been no hearing under § 41-5-206(3), MCA. That section provides, in cases where a youth is charged by information in district court:

> Within 30 days after leave to file the information is granted, the district court shall conduct a hearing to determine whether the matter must be transferred back to the youth court, unless the hearing is waived by the youth or by the youth's counsel in writing or on the record.

Section 41-5-206(3), MCA. The district court may transfer a case to youth court upon a finding that youth court disposition will serve the interests of community protection; that the nature of the offense does not warrant prosecution in district court; and that the best interests of the youth warrant youth court disposition. Section 41-5-206(3)(a)-(c), MCA.

¶4     The District Court conferred with counsel on the transfer hearing issue and determined that Lindsey did not want to waive his right to the hearing. The District Court set a date for the transfer hearing and for the trial. These were each re-set several times, in part to allow Lindsey to secure a psychological evaluation by Dr. William Stratford in support of transferring the case to youth court. In March, 2009, the District Court held the transfer hearing. Dr. Stratford testified about his evaluation and opinions of Lindsey. Stratford concluded by recommending that there was sufficient chance of Lindsey's re-offending that he should be under extended youth court supervision until age 25, and then under an alternative adult sentence that could be imposed if Lindsey failed to comply with conditions until age 25. Dr. Stratford recommended that if such a dual sentence were not possible, the case should not be transferred to youth court, and that an adult sentence was required to protect the community.

¶5     The District Court concluded, on the record and in a subsequent written order, that he would consider transfer to youth court only if the extended jurisdiction dual sentence that Stratford recommended could be imposed, as provided in § 41-5-1602, MCA. Lindsey's attorney told the District Court at the hearing and again in a brief that Lindsey agreed that a dual youth court-adult sentence was appropriate.

¶6     The State had not yet filed a brief on the dual sentence issue and the District Court had not entered a final order when Lindsey and the State entered a plea agreement on the District Court charges. The agreement provided that Lindsey would plead guilty to an amended information charging him with felony sexual assault; that the State would

dismiss the charge of sexual intercourse without consent; and that either side was free to make a sentencing recommendation.

¶7 Lindsey executed and filed a guilty plea and waiver of rights form in which he recited that the plea was voluntary, and not the result of pressure, threats or offers of anything of value. He also represented that there was no agreement as to the amount or kind of punishment the District Court could impose. The form also recited Lindsey's satisfaction with his attorney's representation and with his opportunity to consult with and obtain advice from the attorney. The form recited that Lindsey was not suffering from any emotional or mental disability, that he believed after reviewing the evidence that he would be found guilty by a jury, and that he sexually assaulted the victim.

¶8 The District Court conducted a change-of-plea hearing and initially inquired about the issue of the transfer to youth court. Lindsey's attorney stated that she believed the transfer issue was still alive, but the State responded that the plea agreement was made as to the charge of sexual assault filed by information in District Court. If the transfer could still be ordered, the State said the plea agreement would be rescinded. The District Court offered Lindsey time to consider the situation and suggested that the change-of-plea hearing be continued. Lindsey and his attorney conferred and then informed the District Court that Lindsey would waive his claim to have the case transferred to youth court. The District Court asked whether Lindsey fully understood the ramifications of proceeding as an adult, and Lindsey and his attorney conferred again. Lindsey's attorney then informed the District Court that Lindsey had a "full understanding of the differences that would occur from youth court to adult court and he wishes to proceed now." The District Court

4

inquired a third time whether Lindsey's attorney had sufficient time to discuss the transfer issue with him so that he had a full and knowing understanding of the situation. Lindsey's attorney responded that while it was a complicated issue they had reviewed it several times and she believed that he understood the distinctions between proceeding in youth and adult court. With those assurances, the District Court proceeded with the change-of-plea hearing.

¶9 The District Court then asked Lindsey again if he had any questions about proceeding in adult court and informed him that he would have a second felony on his record because he had recently pled guilty to a separate charge of felony theft. Lindsey said he had no questions, that he understood what he was doing and that he had no disability or impairment that would interfere with his understanding of the proceeding. The District Court informed Lindsey of the registration requirements attendant to conviction of a sexual offense and of the differences in registration requirements between youth and adult courts. The District Court offered an additional opportunity for Lindsey to confer with his attorney about these issues and, after conferring with his attorney, he stated that he wished to proceed.

¶10 Lindsey listened to the elements of the sexual assault charge and the possible maximum punishment for the crime. Lindsey said that he understood and wanted to plead guilty. He answered questions indicating that there was no force, pressure or coercion applied to cause his guilty plea, that it was voluntary, that it was his own independent judgment to do so, that he knew the implications of changing his plea, and that he believed it was in his best interests to do so. He stated that he was satisfied with

the representation by his attorney and that he understood that the District Court was not bound by the plea agreement and could sentence him to any term up to the maximum sentence. After additional assurances from Lindsey that he understood what he was doing and that there was a factual basis for the plea, the District Court accepted Lindsey's guilty plea to sexual assault.

¶11 About two months later, in May, 2009, and prior to sentencing, Lindsey appeared with new retained counsel and moved to withdraw his guilty plea. In July, 2009, the District Court conducted a hearing on the motion. Lindsey testified that he never wanted to plead guilty, that he was pressured by his Public Defender attorney to do so, that he thought he would receive a suspended sentence and would be released from jail. He testified that his attorney had told him that if he went to trial he would be convicted and receive a life sentence. Lindsey also claimed that he suffered from attention deficit disorder and did not understand the proceedings at the change-of-plea hearing. Therefore he argued that he did not voluntarily agree to the guilty plea. The District Court inquired whether Lindsey was raising a claim of ineffective assistance as to his former attorney. Lindsey's new attorney responded that they were not raising such a claim at that time. The District Court informed the State that in light of this representation, there was no need for the State to carry through its plan to call Lindsey's former attorney or her supervisor to make a record on a claim of ineffective assistance.

¶12 After considering post-hearing briefs, the District Court entered an order denying Lindsey's motion to withdraw his guilty plea to sexual assault. The District Court

6

sentenced Lindsey to 25 years with the Department of Corrections, with 20 suspended. Lindsey appeals, raising issues that we restate as follows:

¶13 Issue 1. Whether Lindsey is entitled to have the charge against him dismissed because a transfer hearing was not held within the time provided in § 41-5-206(3), MCA.

¶14 Issue 2. Whether the District Court erred in denying Lindsey's motion to withdraw his guilty plea.

¶15 Issue 3. Whether the District Court erred in failing to respond to Lindsey's request for new counsel.

¶16 Issue 4. Whether Lindsey received ineffective assistance of counsel from his first attorney when she failed to move to dismiss the charges against him because a transfer hearing was not held within the time provided in § 41-5-206(3), MCA.

### DISCUSSION

¶17 *Issue 1. Whether Lindsey is entitled to have the charge against him dismissed because a transfer hearing was not held within the time provided in § 41-5-206(3), MCA.*

¶18 Lindsey argues that he had an absolute due process right to a transfer hearing within 30 days after the information was filed as provided in § 41-5-206(3), MCA, and that failure to strictly comply with the statute is a sufficiently egregious violation of due process to warrant dismissal of the charges against him. The statutory transfer hearing is based upon due process concerns arising from the often wide differences in punishment provided by youth courts and adult courts. *State v. Butler*, 1999 MT 70, 294 Mont. 17, 977 P.2d 1000, *overruled as to the timing of the hearing*, *State v. McKee*, 2006 MT 5, 330 Mont. 249, 127 P.3d 445.

7

¶19 In this case it is clear that Lindsey waived any claim that he was denied due process by the late transfer hearing. First, he pled guilty to the felony charge of sexual assault in District Court. It is well established that a valid guilty plea is a waiver of all non-jurisdictional defects and defenses, including claims of constitutional violations that occurred prior to the plea. *State v. Turcotte*, 164 Mont. 426, 428, 524 P.2d 787, 788 (1974); *Hagan v. State*, 265 Mont. 31, 35, 873 P.2d 1385, 1387 (1994); *State v. Pavey*, 2010 MT 104, ¶ 11, 356 Mont. 248, 231 P.3d 1104. A transfer hearing is not jurisdictional because the District Court had jurisdiction over the case as provided in § 41-5-206, MCA. As a matter of law, therefore, by pleading guilty Lindsey waived any due process claim he may have had.

¶20 In addition, Lindsey specifically and affirmatively waived his rights to conclude the transfer proceeding. As noted above, at the time of the change-of-plea hearing, the District Court conducted the transfer hearing just days earlier. A primary witness was Dr. Stratford, the professional hired by Lindsey to evaluate him and support transferring the case to youth court. At the close of the hearing, the District Court concurred with Dr. Stratford's recommendation that protection of the community required that Lindsey's case be transferred to youth court only as an extended jurisdiction proceeding which could be transferred back to adult court if Lindsey failed to comply with the conditions imposed in youth court. Lindsey's attorney told the District Court at the hearing and again in a brief that Lindsey agreed that a dual youth court-adult sentence under § 41-5-1601, MCA, was appropriate. While the District Court awaited briefing from the State, Lindsey pled guilty to the sexual assault charge in adult court.

8

¶21 At the change-of-plea hearing, the District Court offered Lindsey time to consider the pending transfer situation and suggested that the change-of-plea hearing be continued to allow him time to do so. Lindsey and his attorney then conferred and informed the District Court that Lindsey would *waive his claim* to have the case transferred to youth court. The District Court asked whether Lindsey fully understood the ramifications of proceeding as an adult, and Lindsey and his attorney conferred again. Lindsey's attorney then informed the District Court that Lindsey had a "full understanding of the differences that would occur from youth court to adult court and he wishes to proceed now." It is clear that Lindsey and his attorney, after conferring, informed the District Court more than once that Lindsey knew what he was doing, that he waived the transfer to youth court, and that he wanted to proceed in adult court. The District Court recognized Lindsey's rights regarding the transfer hearing and the record demonstrates that those rights were protected but waived. Lindsey cannot now claim any residual rights arising from the timing of the transfer hearing.

¶22 Lindsey argues that even though he waived completion of the transfer issue, the State coerced him into doing so. He relies upon the State's position at the change-of-plea hearing that if transfer to youth court were still an option, then the plea agreement was off. This, Lindsey contends, coerced him into waiving the transfer to youth court.

¶23 There is no factual support for this contention. First, the agreement to plead guilty to a felony in adult court was inconsistent with a transfer to youth court. Section 41-5-1604, MCA, requires, in extended jurisdiction cases, that there be a youth court adjudicatory hearing under § 41-5-1502, MCA. The court must then impose both a youth

9

court disposition and a conditional adult court sentence. At a minimum the plea agreement here would have had to be re-negotiated prior to the plea hearing to reflect the requirements of the youth court statutes. Second, the District Court gave Lindsey and his attorney more than one opportunity, after the State's comment about the plea agreement being in jeopardy, to confer and to re-consider the transfer situation. They never mentioned any concern about what the State had said or about Lindsey being coerced into staying with the guilty plea following those attorney-client discussions.

¶24 *Issue 2. Whether the District Court erred in denying Lindsey's motion to withdraw his guilty plea.*

¶25 After the District Court held the change-of-plea hearing and accepted Lindsey's guilty plea to the adult charges, Lindsey appeared with retained counsel. He moved to re-instate the briefing schedule on the transfer issue and to withdraw his guilty plea. The District Court held the briefing schedule issue in abeyance pending determination of the motion to withdraw the plea. The District Court held an evidentiary hearing on the motion to withdraw, allowed Lindsey additional time to gather evidence to support his claims, and set a post-hearing briefing schedule. After completion of the post-hearing process the District Court filed an order on November 4, 2009, denying Lindsey's motion.

¶26 This Court reviews de novo the denial of a motion to withdraw a guilty plea, because the issue is a mixed question of law and fact. *State v. Tyler*, 2009 MT 75, ¶ 10, 349 Mont. 461, 204 P.3d 685. A guilty plea is valid if the defendant knowingly and intelligently enters the plea. *State v. Usrey*, 2009 MT 227, ¶ 17, 351 Mont. 341, 212 P.3d

10

279. A plea is voluntary if the defendant is fully aware of the direct consequences of it, including the value of any commitments made to him by the court, prosecutor or his own attorney. *Brady v. U.S.*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970). Voluntariness is assessed under the facts of each case, including the adequacy of the district court's interrogation of the defendant, and the defendant's mental competency and ability to understand the plea. *Usrey*, ¶ 17. The issue is whether the plea was knowing and voluntary at the time it was made. *State v. Brinson*, 2009 MT 200, ¶ 11, 351 Mont. 136, 210 P.3d 164. A defendant's allegations that he had certain mental impressions at the time may bear on voluntariness but must be supported by objective proof in the record. *Brinson,* ¶ 12. We accept a district court's findings of fact on a motion to withdraw a plea unless they are clearly erroneous. *Usrey*, ¶ 13.

¶27 Lindsey contends that his guilty plea was not voluntary; that his attorney at the time misrepresented the sentence he would receive; that he received no benefit from the plea bargain; and that he lacked the capacity to understand the District Court colloquy at the change-of-plea hearing. The District Court determined these issues against Lindsey.

¶28 The District Court first noted Lindsey's experience with the criminal justice system, beginning with a variety of juvenile offenses. In addition, after Lindsey was charged in the present case he was separately charged with burglary and theft, both felonies, and entered a plea agreement to felony theft. The District Court noted that Lindsey raised no issue in the felony theft case about his inability to understand the proceedings or the consequences of a guilty plea.

11

¶29 The District Court reviewed in detail the plea colloquy with Lindsey prior to accepting the guilty plea to sexual assault. After reviewing and quoting from the record, the District Court concluded that the "objective proof" establishes that Lindsey was fully informed when he waived his rights and changed his plea to guilty. The District Court noted Lindsey's repeated answers that he understood the proceedings, that he was satisfied with his attorney, and that he understood the consequences of a guilty plea. The District Court also noted the several instances in which Lindsey was given the specific opportunity to consult with his attorney during the proceeding and in which Lindsey was offered a continuation of the hearing to give him more time to consider and consult. The District Court noted Lindsey's testimony that he had inappropriately touched and had rubbed his genitals on his young victim for his own gratification. In summary, the District Court found that the plea colloquy "established the prima facie adequacy of the Court's interrogation of Lindsey."

¶30 The District Court next considered Lindsey's contention that he had been pressured into pleading guilty by his Public Defender attorney and her supervisor. The District Court determined that the specific questions and answers that Lindsey gave during the change-of-plea hearing support an opposite finding, "that he was not misled, pressured, or coerced into pleading guilty." After listening to Lindsey's testimony about what the attorneys had told him, the District Court concluded that the evidence showed that the attorneys did nothing "other than offer their frank professional assessment of the State's case against him." The District Court concluded that Lindsey's evidence

"establishes no material threats, misrepresentations, pressure or omission that undermines the voluntariness of his plea" and that his claim of involuntariness "is without merit."

¶31 The District Court next considered Lindsey's claim that he suffered from learning disabilities that prevented him from understanding the proceedings at the change-of-plea hearing. First the District Court found "no merit" in Lindsey's "self-serving description of himself as being limited to following direction like a 'trained seal.'" To the contrary, the District Court found that Lindsey had "consistently shown he can initiate meaningful inquiry and understand the proceedings," citing a letter Lindsey sent to the District Court in 2007 pointing out the consequences he would suffer upon conviction. In addition, the District Court noted that Lindsey expressed no learning disability concerns during any of the proceedings in the felony theft case, in the pre-sentence investigation in that case, in any of his bail hearings in the present case, or in Dr. Stratford's evaluation presented in support of transfer to youth court. The District Court reviewed in detail the school records that Lindsey supplied after the hearing on the motion to withdraw the guilty plea. These involved ability assessments when Lindsey was about age 12, and included the evaluator's comment that the results "may not be a true picture of [Lindsey's] abilities because of an apparent lack of effort during the testing." The District Court noted a conclusion from Dr. Stratford's report that Lindsey was "clearly able to read and comprehend the individual test items, [and] that he was attentive in considering his responses." The District Court concluded that Lindsey's contention that he lacked the ability to understand the proceedings was "without merit."

¶32 The District Court next considered Lindsey's contention that he did not understand the impact of sexual offender registration requirements. The court noted again the December, 2007, letter from Lindsey in which he noted that the charges against him were serious and that he would be considered a sex offender for the rest of his life. The District Court noted the specific instances during the change-of-plea hearing in which the registration requirements were discussed and explained, and during which Lindsey was offered additional time to discuss that issue with his attorney. The District Court concluded that Lindsey was "fully informed of the sexual offender registration requirements;" that he declined offers of additional time to consult and consider, and that he specifically stated that he understood the situation. The District Court concluded that the argument had no merit.

¶33 The District Court additionally found that Lindsey did in fact receive benefit from the plea agreement. Most obviously he benefitted from dismissal of the charge of sexual intercourse without consent along with his exposure to its substantial penalties upon conviction. Lindsey's argument that he received no benefit from the plea is not supported by the record. He risked conviction of two major felonies and substantial sentences for both offenses. Clearly he realized substantial benefit from dismissal of the sexual intercourse without consent charge as part of the plea agreement.

¶34 We conclude that the District Court's findings of fact concerning the issues raised as to the validity of Lindsey's guilty plea were not clearly erroneous, and that the District Court's conclusions were properly based upon applicable Montana law.

¶35     *Issue 3.   Whether the District Court erred in failing to respond to Lindsey's request for new counsel.*

¶36     In late December, 2007, Lindsey wrote a letter to the District Court complaining about his Public Defender attorney.  The District Court placed the letter in the court file and directed that a copy of it be sent to the defense attorney and the prosecutor.  On appeal Lindsey contends that the District Court had an obligation to respond to the letter, to investigate the circumstances, and to take action including holding a hearing if warranted.  Lindsey's letter complained that attorney Johns was not communicating with him; that he asked her to "bring things to the attention of the court which she did not do;" that she does not return his phone calls; and that she wanted him to plead guilty.

¶37     Lindsey wrote the letter to the District Court only two weeks after Public Defender Johns filed her notice of appearance and a week after Lindsey made his initial appearance on the charges, accompanied by Johns.  The record also shows that Lindsey made no other complaints about his attorney during the course of the case and that at the change-of-plea hearing he expressly testified that he was satisfied with the representation she provided.

¶38     It is within the district court's discretion to act on a defendant's complaints about his attorney.  When a defendant alleges ineffective assistance of counsel, the district court must determine if the complaint is substantial by inquiring into the nature of the complaints.  A court is required to hold a hearing only if it concludes that the defendant has presented a "seemingly substantial" complaint.  *State v. Hendershott*, 2007 MT 49, ¶ 23, 336 Mont. 164, 153 P.3d 619.  Lindsey cannot prevail on this issue without

15

establishing that the District Court's response (sending the letter to Johns and the State) prejudiced his substantial rights. Section 46-20-701, MCA; *State v. Dewitz*, 2009 MT 202, ¶ 92, 351 Mont. 182, 212 P.3d 1040.

¶39 Lindsey contends on appeal that at the time of the 2007 letter he had never met with Johns, and that the "full extent of the conflict between Lindsey and his attorney Johns is unknown. . . ." These assertions are not consistent with the facts. The letter itself claims that Lindsey had asked Johns to "bring things to the attention of the court" and that she wanted him to plead guilty. This, of course, would require communication between Johns and Lindsey that he now contends never happened. In addition, Johns and Lindsey appeared together at the initial appearance on December 20 just a week before the letter was sent. Neither Lindsey's letter nor his characterizations of it on appeal are internally consistent and are not consistent with the facts. The letter was insufficient to require further action by the District Court.

¶40 This happened at a time very early in the case, and if there had been any on-going substance to Lindsey's dissatisfaction with his attorney there was adequate time to raise the issues again. To the contrary, Lindsey never broached any further complaints. On January 2, 2008, just a few days after the letter, Johns and Lindsey both signed the Omnibus Pretrial Hearing Memorandum. The next day, January 3, Johns and Lindsey both appeared in District Court at the combined omnibus hearing and bail hearing. Contrary to Lindsey's claims, the record shows that he had multiple opportunities nearly contemporaneous with the letter to confer with his attorney and to raise the ineffective assistance issues with the District Court but did not do so. Later, when Lindsey changed

16

his plea to guilty, he affirmatively represented to the District Court that he was satisfied with the performance of his attorney.

¶41 Lindsey has failed to make a material showing that the District Court's response—sending the letter to defense and prosecution counsel—was an abuse of discretion under the facts. Lindsey has not demonstrated that the outcome of his case would have been different if the District Court had responded differently, and therefore has not demonstrated that this prejudiced his substantial rights. Finally, this claim that the District Court should have further investigated the circumstances of the letter is a non-jurisdictional claim that is waived upon a plea of guilty, as discussed above. *Turcotte*, 164 Mont. at 428, 524 P.2d at 788; *Hagan*, 265 Mont. at 35, 873 P.2d at 1387; *Pavey,* ¶ 11.

¶42 *Issue 4. Whether Lindsey received ineffective assistance of counsel from his first attorney when she failed to move to dismiss the charges against him because a transfer hearing was not held within the time provided in § 41-5-206(3), MCA*.

¶43 It is well established that this Court analyzes claims of ineffective assistance of counsel under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). The *Strickland* test requires the complaining defendant to show that his attorney's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. A defendant must meet both parts of the test to be entitled to relief, and an insufficient showing under one part obviates the need to even address the other. *Whitlow v. State,* 2008 MT 140, ¶ 11, 343 Mont. 90, 183 P.3d 861. A claim of ineffective assistance that can be decided upon the

district court record is a record-based claim that must be raised on direct appeal. *In re Petition of Hans*, 1998 MT 7, ¶ 41, 288 Mont. 168, 958 P.2d 1175. The allegation that counsel failed to object to an alleged error in the district court is a record-based claim of ineffective assistance. *Hagen v. State*, 1999 MT 8, ¶ 20, 293 Mont. 60, 973 P.2d 233; *Hans*, ¶ 42. Lindsey's contention that his attorney was ineffective for failing to move to dismiss the charges based on the lack of a timely transfer hearing is equivalent and is record-based.

¶44     In this case, Lindsey's claim of ineffective assistance of counsel must fail because he has not met the second part of the *Strickland* test, which requires him to show that he was prejudiced by the conduct of the attorney. Lindsey has not demonstrated that the charges against him would have been dismissed if only his attorney had made such a motion some time 30 days after the information was filed. Lindsey concedes that he has not located any case law that requires dismissal of the charges if a transfer hearing is not held within 30 days of the filing of the information. The statute itself provides no such sanction. Section 41-5-206(3), MCA.

¶45     Dismissal of criminal charges is a severe sanction that has been limited to instances of "egregious" or "outrageous" governmental misconduct. *State v. Schauf*, 2009 MT 281, ¶ 26, 352 Mont. 186, 216 P.3d 740. In other important instances of governmental failure to protect discrete rights of the accused, remedies other than dismissal of the charges have been applied. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963) (where prosecution fails to disclose exculpatory evidence the remedy is retrial); *Miranda v. Arizona*, 384 U.S. 463, 86 S. Ct. 1602 (1966) (where law

18

enforcement fails to provide adequate custodial warnings the remedy is suppression of evidence).  Dismissal of charges can be warranted as a consequence of governmental misconduct in rare situations.  *State v. Strong*, 2010 MT 163, 357 Mont. 114, 236 P.3d 580 (dismissal ordered where defendant was held for 42 days without an initial appearance before a magistrate).

¶46   Lindsey has not demonstrated that untimely transfer hearings are an on-going problem that warrants any kind of severe sanction.  In Lindsey's case, as soon as the District Court noted the absence of a transfer hearing he provided the hearing.  Lindsey was allowed the time he requested to prepare and present expert testimony in his favor, and the District Court was considering transferring the case to youth court if it could be accomplished under the extended jurisdiction statutes as discussed above.  While the transfer hearing happened past the time provided in the statute Lindsey has not demonstrated any way in which he was substantially prejudiced by the delay.  He has not shown that his circumstances changed, that he lost evidence or witnesses or that the outcome would have been any different in any way if the transfer hearing had been held earlier.  Lindsey had his transfer hearing and chose instead to truncate the process by voluntarily entering a guilty plea.

¶47   Since Lindsey cannot meet the prejudice requirement of the *Strickland* test, his claim of ineffective assistance of counsel must fail.

¶48   The District Court is affirmed.

/S/ MIKE McGRATH

19

We concur:


/S/ JAMES C. NELSON
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JIM RICE