DA 10-0399

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 210

STATE OF MONTANA,

Plaintiff and Appellee,

v.

RICHARD PHELPS EDWARDS,

Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DC 09-017
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Colin M. Stephens; Smith & Stephens, P.C., Missoula, Montana

For Appellee:

Steve Bullock, Montana Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

John Petak, III, Stillwater County Attorney, Columbus, Montana;
Barbara Harris, Assistant Attorney General, Special Deputy County
Attorney for Stillwater County

Submitted on Briefs:  July 20, 2011

Decided:  August 30, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Richard Edwards appeals from his conviction in the District Court, Twenty-Second Judicial District, Stillwater County.  We affirm.

## ISSUES

¶2     Edwards raises three issues on appeal:

¶3     1. Whether the District Court erred when it denied Edwards' motion in limine to prevent his wife from testifying at trial.

¶4     2.  Whether Edwards was denied effective assistance of counsel.

¶5     3.  Whether the District Court erred when it failed to inquire into Edwards' motion for new counsel.

## BACKGROUND

¶6     On April 27, 2009, the State filed an information charging Edwards with the deliberate homicide of Daniel Lavigne.  Lavigne had been found shot at his residence in 2002.  The State subsequently filed an amended information, adding one count of tampering with physical evidence.

¶7     On November 2, 2009, prior to trial, Edwards filed a motion in limine to prevent his wife, Sherry Edwards, from testifying based on spousal privilege.  Specifically, Edwards sought to exclude Sherry's testimony concerning (1) observations of Edwards' conduct at the time Lavigne was shot, and (2) statements made by Edwards to Sherry that were accompanied by threats.  Edwards, the State and the District Court all agreed to apply the 2001 versions of §§ 26-1-802, and 46-16-212, MCA, regarding spousal

privilege, because the alleged homicide had occurred in 2002. On January 13, 2010, the District Court denied Edwards' motion. The District Court concluded, "relevant evidence of Sherry's [sic] Edwards' observations of the alleged homicide together with any relevant communication between spouses regarding the alleged homicide delivered or accompanied by a threat is not excludable as evidence at trial on either a competency or spousal privilege basis."

¶8 At trial, the defense examined Sherry twice, once during cross-examination, and once during Edwards' case-in-chief. Throughout questioning, the defense sought to portray Sherry as unreliable and repeatedly challenged her credibility as a witness. At the outset of cross-examination, defense counsel explained, "I'll be kind of winging it, because I wasn't expecting to actually talk to you until tomorrow." Defense counsel proceeded to elicit that Sherry had lied to investigating officers, had a shifting memory of details and had made numerous prior inconsistent statements. One exchange provided:

| | |
|---|---|
| [Defense]: | And I know this is very difficult. You went through a very long, long series of statements whereby you said he had laid out two to three days? |
| [Sherry]: | Yes, ma'am. |
| [Defense]: | And you had even sworn upon your dead father? |
| [Sherry]: | Yes, ma'am, I did. |
| [Defense]: | And your father meant everything to you, didn't he? |
| [Sherry]: | Yes, he did. Yes, he did. |
| [Defense]: | So even upon your dead father, you lied? |
| [Sherry]: | Yes, Ma'am, I did. And I regret that terribly. I was trying to protect my mother. |
| [Defense]: | I'm not asking anything if you could just. . . . *And I'm sorry. I'm not as fast or quite as prepared as I had anticipated being. I had honestly not anticipated you testifying until tomorrow. And so I was kind of in pre-prep.* |

3

(Emphasis added.) Following that exchange, Sherry conceded there were many inaccuracies in the written statement she provided to law enforcement personnel.

¶9 During Edwards' case-in-chief, defense counsel continued to attack Sherry's credibility, focusing on her inconsistent prior versions of the events surrounding Lavigne's death. Additionally, defense counsel accused Sherry of bias, asserting she changed her story only after Edwards left her and moved in with another woman. Edwards concedes that defense counsel did a "yeoman's job" in re-examining Sherry.

¶10 On March 26, 2010, a jury found Edwards guilty of deliberate homicide and tampering with physical evidence. On April 22, 2010, prior to sentencing and still represented by counsel, Edwards filed a pro se motion entitled "Motion for new counsel and a new trial." He articulated a number of reasons why he felt trial counsel had been ineffective. The District Court forwarded the motion to both the State and defense, requesting that "defense counsel review the motion and take such action that counsel deems appropriate." No further action was taken.

¶11 On June 1, 2010, Edwards appeared at a sentencing hearing with the same defense counsel who represented him at trial. He received a 100-year term of incarceration in the Montana State Prison with a 50-year restriction on parole eligibility. Edwards filed a timely appeal to this Court.

STANDARDS OF REVIEW

¶12 A district court's ruling on a motion in limine is an evidentiary ruling that this Court reviews for an abuse of discretion. *State v. Meredith*, 2010 MT 27, ¶ 42, 355 Mont. 148, 226 P.3d 571. Where that ruling is based on interpretation of a statute, we

4

review the district court's interpretation de novo and its application for abuse of discretion. *State v. Guill*, 2010 MT 69, ¶ 25, 355 Mont. 490, 228 P.3d 1152.

¶13 "Ineffective assistance of counsel claims raise mixed questions of law and fact that we review de novo." *State v. Savage*, 2011 MT 23, ¶ 20, 359 Mont. 207, 248 P.3d 308.

¶14 "Absent an abuse of discretion, this Court will not overrule a district court's ruling on a request for substitution of counsel, which is within the sound discretion of the district court." *State v. Hendershot*, 2007 MT 49, ¶ 19, 336 Mont. 164, 153 P.3d 619.

## DISCUSSION

¶15 *Whether the District Court erred when it denied Edwards' motion in limine to exclude the testimony of his wife.*

¶16 As a threshold matter, we conclude that the District Court should have applied the 2009 version of § 26-1-802, MCA, instead of the 2001 version. In criminal actions, Montana has two statutorily-enacted spousal privileges, §§ 26-1-802 and 46-16-212(1)(a), MCA.[1] *State v. Roberts*, 194 Mont. 189, 192, 633 P.2d 1214, 1216 (1981). A rule of testimonial disqualification that gives a party-spouse the power to grant or withhold consent to another spouse's testimony is a privilege. *Trammel v. United States*, 445 U.S. 40, 44, 100 S. Ct. 906, 909 (1980). As this Court has previously concluded that the spousal privilege contained in § 46-16-212, MCA, is procedural, *State v. Moore*, 254 Mont. 241, 247, 836 P.2d 604, 608 (1992), we conclude that § 26-1-802, MCA, is

---

[1] Section 46-16-212(1)(a), MCA, provides a spousal privilege to withhold consent: "Neither spouse may testify to the communications or conversations between spouses that occur during their marriage unless: (a) consent of the defendant-spouse is obtained." The District Court correctly analyzed § 46-16-212, MCA, and that ruling has not been challenged on appeal.

procedural as well. As spousal privileges govern whether a spouse may offer testimony against the other spouse, they concern trial and pre-trial procedure. Procedural statutes "in effect at the time that a case proceeds to trial are the rules that are to be applied to the resolution of that dispute." *Wolfe v. Webb*, 251 Mont. 217, 227, 824 P.2d 240, 246 (1992); *Moore*, 254 Mont. at 247, 836 P.2d at 608. Edwards filed the motion in limine in November 2009. The District Court should have applied the 2009 version of § 26-1-802, MCA. However, we will uphold a district court that reaches the right result for the wrong reason. *State v. Parrish*, 2010 MT 196, ¶ 11, 357 Mont. 375, 239 P.3d 957.

¶17 Applying the 2009 spousal privilege to this case, we conclude that the District Court did not err when it permitted Sherry's testimony about (1) observations of Edwards' actions, and (2) Edwards' marital communications regarding Lavigne's murder that were accompanied by threats. The 2009 version of § 26-1-802, MCA, provides:

> Neither spouse may, without the consent of the other, testify during or after the marriage concerning any communication made by one to the other during their marriage. The privilege is restricted to communications made during the existence of the marriage relationship and does not extend to communications made prior to the marriage or to communications made after the marriage is dissolved. The privilege does not apply to a civil action or proceeding by one spouse against the other or to a criminal action or proceeding for a crime committed by one spouse against the other or against a child of either spouse.

Each spouse has the statutory privilege to withhold consent, preventing the other spouse from testifying to marital communications. *State v. Nettleton*, 233 Mont. 308, 317, 760 P.2d 733, 739 (1988) (where husband withheld consent, § 26-1-802, MCA, prevented ex-wife from testifying that husband had admitted to homicide while they were married).

6

¶18 Under the 2009 version of § 26-1-802, MCA, it was not error to permit Sherry's testimony about her observations of Edwards' actions at the time of Lavigne's murder. Sherry could testify about observations of Edwards' actions without his consent, because Edwards' conduct did not constitute communications. The spousal privilege in § 26-1-802, MCA, extends to, "any *communication* made by one [spouse] to the other during their marriage." Section 26-1-802, MCA (emphasis added). The "communication for which privilege is sought must be an utterance or other expression intended to convey a message to the other spouse." *Nettleton*, 233 Mont. at 314, 760 P.2d at 737. A spouse's conduct alone does not constitute a "communication" for the purpose of § 26-1-802, MCA. *Nettleton*, 233 Mont. at 313, 760 P.2d at 737.

¶19 Nor did the District Court err when it determined that spousal privilege did not extend to Edwards' communications that were accompanied by threats towards Sherry. For a communication between spouses to be privileged, it must be (1) an utterance or other expression intended to convey a message between spouses, and (2) intended to be confidential "in that it was conveyed in reliance on the confidence of the marital relationship." *Nettleton*, 233 Mont. at 317, 760 P.2d at 739. A spouse does not rely on the confidence of the marital relationship when the purpose of the communication is to "terrify and intimidate" the other spouse. *Nettleton*, 233 Mont. at 317, 760 P.2d at 739.

¶20 Edwards' threats towards Sherry were not made in reliance of their marital relationship. At the motion in limine hearing, Sherry testified that Edwards "pulled a shotgun and put it in my face and told me if I ever went to the cops, or ever told anyone, that he would kill me, kill my family, and burn my grandmother's house down." A

7

husband who attempts to secure the silence of his wife by pointing a gun at her, threatening both her life and home of her grandmother, has failed to communicate in reliance on the confidence of the marital relationship. The District Court did not err when it determined that Edwards' communications accompanied by threats were not privileged under § 26-1-802, MCA.

¶21 *Whether Edwards was denied effective assistance of counsel.*

¶22 Edwards asserts he was denied effective assistance because defense counsel twice conceded her lack of preparation in front of the jury: (1) "I'll be kind of winging it, because I wasn't expecting to actually talk to you until tomorrow," and (2) "I'm sorry, I'm not as fast or quite as prepared as I had anticipated being. I had honestly not anticipated you testifying until tomorrow. And so I was kind of in pre-prep." This Court evaluates claims of ineffective assistance of counsel (IAC) based on the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052 (1984). *Savage*, ¶ 22. To succeed on a claim of IAC, a criminal defendant must demonstrate (1) that counsel's performance was deficient, and (2) the deficient performance was prejudicial to the defense. *State v. Lindsey*, 2011 MT 46, ¶ 43, 359 Mont. 362, 249 P.3d 491. Failure of either prong is fatal to an IAC claim. *Lindsey*, ¶ 43. Furthermore, a court need not address the two prongs in any specific order. *Becker v. State*, 2010 MT 93, ¶ 11, 356 Mont. 161, 232 P.3d 376. Where it is easier to dispose of an IAC claim on the prejudice prong, that course should be followed. *Becker*, ¶ 11; *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

8

¶23 We need not pass judgment on whether defense counsel's conduct was deficient, because Edwards' allegations fail to establish prejudice. To establish prejudice, a defendant must show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Becker*, ¶ 11 (quoting *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2068). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Becker*, ¶ 11 (quoting, *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

¶24 Edwards argues he was prejudiced by defense counsel's two admissions of lack of preparation for cross-examination. He asserts that these two statements, made in front of the jury, resulted in irreparable damage to his defense. We disagree.

¶25 Sherry admitted repeated lies to law enforcement, and confirmed prior inconsistent statements. The substance of Sherry's cross-examination testimony harmed her credibility as a witness. During Edwards' case-in-chief, defense counsel again attacked Sherry's credibility, walking her through the history of her prior inconsistent versions of the events surrounding Lavigne's death. Furthermore, defense counsel raised the specter that Sherry had only changed her story, accusing Edwards of Lavigne's murder, after he left her for another woman. Even Edwards concedes that this performance constituted a "yeoman's job."

¶26 Edwards' cite to *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008), misses the mark. In *Sechrest*, defense counsel's lack of preparation resulted in prejudice, because "some of the most damaging testimony presented during the penalty phase of trial was elicited by Sechrest's own counsel, from a witness Sechrest's counsel had originally

9

selected and could have prevented from testifying." *Sechrest*, 549 F.3d at 816. In contrast, Edwards voices no complaint with the substance of Sherry's testimony during cross-examination.

¶27    At its core, Edwards' argument is that the jury was unable to distinguish between two off-hand comments made by defense counsel, and the actual substance of Sherry's testimony. Aside from failing to establish prejudice, such an argument amounts to little more than "a lack of confidence in the intelligence and common sense of the average juror." *Lindberg v. Leatham Bros.*, 215 Mont. 11, 22, 693 P.2d 1234, 1241 (1985). Edwards has failed to show prejudice amounting to a reasonable probability of a different outcome sufficient to undermine confidence in his conviction.

¶28    *Whether the District Court erred when it failed to inquire into Edwards' motion for new counsel.*

¶29    After the District Court received Edwards' post-trial motion, it conducted no further investigation. However, despite this error, remand is not necessary. Edwards raised no complaint that communications had broken down or that he feared counsel would fail to effectively represent him going forward to sentencing. When a defendant alleges denial of effective assistance of counsel and requests appointment of new counsel, a district court must conduct an adequate initial inquiry in order to determine whether the allegations are seemingly substantial. *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016; *Hendershot*, ¶ 24. Where a district court fails to conduct "even a cursory inquiry," the inquiry is inadequate and remand is justified. *Happel*, ¶ 14.

¶30 "A district court's failure to investigate a defendant's timely substitution request is error." *Wilson v. State*, 1999 MT 271, ¶ 25, 296 Mont. 465, 989 P.2d 813, *overruled on other grounds State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817. However, reversal is only necessitated when the defendant's conflict with counsel was sufficient to require substitution at the time the request was made. *Wilson*, ¶¶ 23, 25. In other words, the district court must assess whether an actual conflict exists, when the motion is made, that would preclude the proceedings from moving forward without a new attorney representing the defendant.

¶31 Following a conviction, a defendant may allege, as was done in this case, that his attorney made mistakes during the course of the trial. Edwards was solely concerned with prior events: (1) defense counsel was unprepared for Sherry's testimony, (2) the jury was not informed of certain facts concerning Edwards' ownership of firearms, (3) an independent pathologist should have been retained, (4) the least experienced investigator was employed, (5) a clear timeline was not presented to the jury, and (6) the prosecution was sitting too close to the jury. Post-trial concerns, based solely on the fact that the defendant was convicted by a jury, are not of a sufficient magnitude to require the substitution of counsel at the time the motion was written.

¶32 Only where the conflict between defendant and counsel results in a "complete collapse" of the attorney client relationship or ineffective assistance of counsel is new counsel merited. *Robinson v. State*, 2010 MT 108, ¶¶ 20, 23, 356 Mont. 282, 232 P.3d 403 (no "complete collapse" of relationship where communication breakdown was initiated by client and attorney was able to continue to perform reasonably); *Wilson*, ¶ 20.

11

Furthermore, the burden is on the defendant to present material facts that establish the magnitude of the conflict. *State v. Dethman*, 2010 MT 268, ¶ 16, 358 Mont. 384, 245 P.3d 30. Bare, unsupported assertions do not suffice. *State v. Kaske*, 2002 MT 106, ¶ 30, 309 Mont. 445, 47 P.3d 824.

¶33 Edwards did not allege a conflict that resulted in a total lack of communication, nor did he claim that his attorneys were unable or unwilling to represent him at the sentencing hearing. Consequently, while it was error for the District Court not to conduct an inquiry, under the facts of this case, reversal and remand is not required.

¶34 Affirmed.


/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE