DA 11-0087

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 243

TIMOTHY J. LONGJAW,

      Petitioner and Appellant,

  v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 09-646
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Matthew J. Wald; Wald Law Office, PLLC, Hardin, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

      Fred Van Valkenburg, Missoula County Attorney; Jason Marks, Deputy
County Attorney; Missoula, Montana

Submitted on Briefs:  August 8, 2012

Decided:  October 30, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 A jury convicted Timothy J. Longjaw (Longjaw) of aggravated burglary and sexual intercourse without consent in the Fourth Judicial District Court. Longjaw argues his convictions should be reversed because his standby counsel had a conflict of interest, the District Court erred by modifying the jury instructions regarding aggravated burglary during jury deliberations, and his counsel was ineffective for failing to obtain an independent medical expert. The State concedes reversible error on the instruction issue and requests that Longjaw's conviction for aggravated burglary be vacated on that basis. Because Longjaw was also convicted of sexual intercourse without consent, we must undertake review of the remaining two issues:

¶2 *1. Did Defendant's standby counsel have an active conflict of interest that requires reversal of the Defendant's sexual intercourse without consent conviction?*

¶3 *2. Did the Defendant's counsel render ineffective assistance by failing to obtain an independent medical expert to aid in the defense?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Longjaw was charged in December 2009 with aggravated burglary and sexual intercourse without consent. Longjaw forced his way into the apartment of a mentally disabled woman with whom he was acquainted and sexually assaulted her. The victim's daughter called the police to request a welfare check on her mother. When the police arrived at the apartment, they found Longjaw asleep and intoxicated in the living room. The victim said Longjaw ripped off her bra and forced her to have sex with him and repeatedly asked the officers to remove Longjaw from her apartment. The victim was

2

examined by a registered nurse from the First Step sexual assault program at St. Patrick's Hospital in Missoula. The registered nurse found that the victim's injuries were inconsistent with consensual sex.

¶5 Longjaw was convicted of both charges after a jury trial in the Fourth Judicial District Court, Missoula County, in September 2010. The District Court sentenced Longjaw to 40 years in the Montana State Prison for aggravated burglary and 60 years in the Montana State Prison for sexual intercourse without consent, the sentences to run concurrently.

¶6 Longjaw was represented by several attorneys during pre-trial proceedings. Longjaw was first represented by Katie Green from the Office of the Public Defender, but due to a conflict of interest between Longjaw and another client of the office, William Boggs was contracted to represent Longjaw as conflict counsel. Disagreements between Boggs and Longjaw arose, and the case was assigned to Jordan Kilby and Gregory Hood of the Office of the Public Defender. The record indicates there were personality conflicts within these attorney-client relationships. On August 20, 2010, Longjaw filed a motion for leave to represent himself. The District Court conducted a hearing on August 24 on Longjaw's motion and thereafter denied the request. On August 31, Longjaw renewed his request, and after questioning Longjaw and determining that Longjaw understood the dangers associated with self-representation, the District Court granted his request and directed that Kilby and Hood would act as standby counsel for the trial.

¶7     On the morning of trial, Kilby and Hood informed the District Court that a witness on the State's witness list, Jennifer Haygood (Haygood), had previously been represented by their regional public defender office on a different but tangentially related matter, which presented a potential conflict of interest. Kilby said, "I think even as standby counsel we might have a problem. But it is our agency's position that we don't," adding that the potential conflict had been through two levels of review by the Office of the Public Defender. The court stated it did not have an opinion on the conflict at that point and would have to think about it further. The State indicated it would not call Haygood as a witness. No further inquiry was made by the court, and the case proceeded to trial. During trial, Longjaw called Haygood as a witness and questioned her briefly.

¶8     In response to Longjaw's expressed concerns about obtaining a second medical opinion and other issues, the District Court conducted a hearing on April 29, 2010. Boggs, who was then representing Longjaw, explained that, in his view, a second opinion might not be necessary because he anticipated that an interview with the medical staff at First Step would "obviate the need for a second opinion, but I'm not certain of that." Boggs indicated he was not then inclined to request a second opinion, stating "I'm not going to do it unless the Court orders me to, unless I think it's important to the case to get a second opinion. And I'm just not in a position to know that yet."

¶9     During jury deliberations, the jury sent a note to the court asking for clarification on jury instruction number 7, which read: "[a] person commits the offense of aggravated burglary if the person knowingly enters *and* remains unlawfully in an occupied structure

4

. . ." (emphasis added). The court sent a note to the jury changing jury instruction number 7 to read: "[a] person commits the offense of aggravated burglary if the person knowingly enters *or* remains unlawfully in an occupied structure . . ." (emphasis in original). The court similarly modified the language in jury instruction number 8.

**DISCUSSION**

¶10    *1. Did the Defendant's standby counsel have an active conflict of interest that requires reversal of the Defendant's sexual intercourse without consent conviction?*

¶11    Criminal defendants are guaranteed the right to assistance of counsel through the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. *State v. St. Dennis*, 2010 MT 229, ¶ 28, 358 Mont. 88, 244 P.3d 292 (citing *Kills On Top v. State*, 2000 MT 340, ¶ 37, 303 Mont. 164, 15 P.3d 422). The right to "conflict-free representation" guaranteed in the Sixth Amendment is applied to the states through the Due Process Clause of the Fourteenth Amendment. *St. Dennis*, ¶ 28. We review the conflict of interest issue *de novo*. *St. Dennis*, ¶ 19.

¶12    The State notes a conflict of authority nationally on the question of whether the right to conflict-free representation extends to standby counsel and the absence of Montana precedent on the point. Longjaw argues that the right should extend to standby counsel and offers *Washington v. McDonald*, 22 P.3d 791 (Wash. 2001), in support. In *McDonald*, the Supreme Court of Washington extended the right of conflict-free representation to standby counsel, holding that prejudice is presumed and reversal is required when an actual conflict existed or when the trial court reasonably should have known about a conflict but failed to properly inquire into the conflict. *McDonald*, 22

5

P.3d at 795. Longjaw urges adoption of the rules stated in *McDonald*, arguing that "where counsel raises an issue of conflict of interest to the district court, reversal should be automatic because of the fundamental seriousness of a Sixth Amendment violation."

¶13 However, the central issue briefed by the parties, which we deem dispositive, is whether an actual conflict existed in this case. Thus, assuming arguendo that the right to conflict-free representation extends to standby counsel, we turn to that central issue. We decline to address further, as unnecessary under these facts, the various rules and analyses adopted by Washington and other jurisdictions.

¶14 Noting "the unique nature of public defender offices as opposed to private law firms," we held that "the better approach for analyzing purported conflicts of interest within [the Office of the Public Defender] is the case-by-case approach." *St. Dennis*, ¶¶ 30, 32. "Under the case-by-case approach, if defendant proves that an actual conflict exists, he or she must then demonstrate that counsel's performance was adversely affected by the conflict." *St. Dennis*, ¶ 29 (citing *Illinois v. Morales*, 808 N.E.2d 510, 514-15 (Ill. 2004)). *See also Thurston v. State*, 2004 MT 142, ¶ 17, 321 Mont. 411, 91 P.3d 1259 ("[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected counsel's performance."). If we determine no actual conflict existed, "we need not examine counsel's performance to determine if such performance was adversely affected by the ostensible conflict." *St. Dennis*, ¶ 37.

6

¶15 We have explained that "[a]n actual conflict, as opposed to the mere possibility of a conflict, is necessary." *State v. Deschon*, 2002 MT 16, ¶ 18, 308 Mont. 175, 40 P.3d 391 (*Deschon I*). "A defense attorney has an actual conflict when he is required to make a choice advancing another client's interests to the detriment of his client's interest." *Deschon I*, ¶ 18 (citing *U.S. v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998)) (citation omitted). In *St. Dennis*, we cited the discussion concerning potential and actual conflicts provided in *People v. Christian*, 41 Cal. App. 4th 986 (Cal. 1996). *St. Dennis*, ¶ 33. *Christian* explained that "[t]here is a possibility of conflict, then, if the interest of the defendants may diverge at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." *Christian*, 41 Cal. App. 4th at 992 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708 (1980)).

¶16 Longjaw argues a conflict of interest existed because his standby counsel previously represented Haygood in another matter, described by Hood as "tangentially" related to Haygood's involvement in this case. In response to defense counsel's concerns about a potential conflict, the State confirmed its position that, though Haygood had been listed as a witness, it would not call her to testify, and the State did not do so. Representing himself at trial, Longjaw called Haygood to testify. Longjaw questioned her briefly and the record reveals no involvement by standby counsel regarding Haygood, nor is any such involvement asserted by Longjaw.

7

¶17  "A defense attorney has an actual conflict when he is required to make a choice advancing another client's interests to the detriment of his client's interest." *Deschon I,* ¶ 18 (citation omitted).  Although a potential conflict may have been present here, we conclude that the circumstances did not progress to an actual conflict wherein standby counsel were required to make a choice to the detriment of Longjaw's interests.  Where there is no actual conflict, we need not "examine counsel's performance to determine if such performance was adversely affected by the ostensible conflict." *St. Dennis,* ¶ 37.

¶18  *2. Did the Defendant's counsel render ineffective assistance by failing to obtain an independent medical expert to aid in the defense?*

¶19  "In considering ineffective assistance of counsel claims on direct appeal, we apply the two-pronged test set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052." *State v. Deschon*, 2004 MT 32, ¶ 31, 320 Mont. 1, 85 P.3d 756 (*Deschon II*).  The defendant must establish (1) "that counsel's performance was deficient or fell below an objective standard of reasonableness," and (2) "prejudice by demonstrating that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Deschon II,* ¶ 31.  This Court may review a claim of ineffective assistance of counsel on direct appeal only when the record "fully explains why counsel took, or failed to take, action in providing a defense for the accused." *Deschon II,* ¶ 32.

¶20  In *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340, we explained that "the definitive question that distinguishes and decides which actions are record and which are non-record, is *why*? . . . [D]oes the record fully explain *why* counsel took the

8

particular course of action?" (Emphasis in original.) When ineffective assistance of counsel claims are non-record based, the proper avenue for review is through a petition for postconviction relief. *State v. Webster*, 2005 MT 38, ¶ 9, 326 Mont. 112, 107 P.3d 500.

¶21 Longjaw ultimately represented himself at trial but claims that his counsel's earlier failure to obtain an independent medical expert "to review the records of the physical examination of the alleged victim and to testify at trial" constitutes ineffective assistance.

¶22 The record reveals that, at the April 29, 2010, hearing, then-counsel Boggs indicated an independent medical expert may not be necessary because he believed the necessary information could be obtained by examination of the medical providers. Longjaw was represented by three other attorneys, but this statement by counsel Boggs is the only reference by counsel to the issue in the record. Thus, the record does not fully explain "why" an independent medical examination or expert was not ultimately obtained by Longjaw's counsel, and the claim cannot be reviewed on appeal. Longjaw may pursue the claim in postconviction relief proceedings.

¶23 In response to Longjaw's challenge to the District Court's revision of the jury instructions for aggravated burglary during the jury's deliberations, the State "concedes under the particular facts presented in this record that Longjaw's aggravated burglary conviction should be reversed." We therefore reverse Longjaw's conviction for aggravated battery.

9

¶24 Longjaw's conviction for sexual intercourse without consent is affirmed. His conviction for aggravated burglary is reversed. We remand this matter for entry of an amended judgment.

¶25 Affirmed in part, reversed in part, and remanded.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice James C. Nelson concurring in part and dissenting in part.

¶26 I concur with the Court's decision to vacate Longjaw's conviction for aggravated burglary, and with the Court's decision to affirm on Issue 2. However, I dissent from Issue 1 because I disagree with the Court's conclusion that the trial court adequately inquired into the conflict of interest raised by Longjaw's standby counsel. In my view, standby counsel has the same obligations to avoid conflicts of interest as do appointed or retained counsel.

¶27 In this case, the State asserted in its brief on appeal that standby counsel "never announced they had conflicts of interest." A review of the transcript in this case clearly shows that the contrary is true.

¶28 Prior to the start of trial, Ms. Kilby and Mr. Hood from the Region 2 Office of Public Defender (OPD), who were acting as standby counsel, informed the Court that there was a witness on the State's witness list, Jennifer Haygood, who had been represented by the Region 2 OPD on a matter related to Longjaw's case. Ms. Kilby and Mr. Hood informed the court that although the State may not call Haygood as a witness, Longjaw wanted to call her as a witness. Haygood was the daughter of the victim in this case. Ms. Kilby and Mr. Hood expressed concern that, in their opinions, a conflict of interest existed. The entire colloquy between the court and counsel follows:

> MS. KILBY: [Jennifer Haygood] is on the State's Witness and Exhibit List. However, it was our understanding the State was not going to call her; the reason being our office has represented Ms. Haygood in the past. We, Mr. Hood and I, took this issue through two levels of review. It's our agency's belief that this is not a conflict of interest. We did, however, just want to bring the issue to the Court in case the Court felt otherwise.
> THE COURT: Well, at this point you're simply standby counsel. And I'm not going to stop Mr. Long Jaw [sic], as long as he's his own attorney, from putting on a defense or calling what witnesses he thinks are appropriate.
> MS. KILBY: Certainly. And that wouldn't be what we were requesting. We wanted to get –
> MR. HOOD: We wanted to put the Court on notice in case something happens where we are put back on the case and a conflict does exist. You know, we just wanted to alert the Court to the possibility of that.
> THE COURT: All right. Well, did you represent her in connection with anything that she'll be testifying about.
> MR. HOOD: Tangentially, yes, Your Honor.

MS. KILBY: And, Your Honor, like I said, we'll – *I think even as standby counsel we might have a problem.* But it is our agency's position that we don't. We have been through two levels of review but, if the Court feels otherwise, then –

THE COURT: At this point, I don't have an opinion. So I guess, Mr. Marks, do you have anything you want to add on that point?

MR. MARKS: Your Honor, I don't believe there's a problem as long as Mr. Long Jaw's [sic] representing himself. As Ms. Kilby said, I do not intend to call Ms. Haygood in my case, but I don't see any reason the defendant can't.

THE COURT: Well, I don't know. I'll have to think about it. I appreciate your bringing this to my attention. [Emphasis added.]

The court made no further inquiry into the matter.

¶29 "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other right he may have." *United States v. Cronic*, 466 U.S. 648, 654, 104 S. Ct. 2039, 2044 (1984). Furthermore, a criminal defendant's right to the effective assistance of counsel includes the right to conflict-free representation. *State v. St. Dennis*, 2010 MT 229, ¶ 28, 358 Mont. 88, 244 P.3d 292 (citing U.S. Const. amend. VI; Mont. Const. art. II, § 24; *State v. Cook*, 171 P.3d 1282, 1289 (Idaho App. 2007)). Indeed, the Supreme Court pointed out in *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984), that effective assistance of counsel includes both a duty of loyalty and a duty to avoid conflicts of interest. The Supreme Court has also pointed out that "[i]t is well settled that '[a] criminal defendant is entitled to counsel whose undivided loyalties lie with the client.' " *Stoia v. United States*, 109 F.3d 392, 395 (7th Cir. 1997) (quoting *United States v. Barnes*, 909 F.2d 1059, 1065 (7th Cir. 1990); *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986)).

12

¶30 I see no reason why standby counsel should not be required to fulfill the same basic obligations for effective representation as appointed or retained counsel. In fact, why appoint standby counsel at all if they are not required to offer effective representation when called upon by the accused to do so?

¶31 The Washington Supreme Court considered this very issue of whether a conflict of interest between standby counsel and a defendant merited a presumption of prejudice justifying reversal of the defendant's conviction when the trial court was notified of the conflict but failed to inquire into its nature and extent. *State v. McDonald*, 22 P.3d 791 (Wash. 2001). In that case, the court determined that even though a defendant who is afforded the right to self-representation cannot claim ineffective assistance of counsel for the obvious reason that the defendant has become his own counsel and assumes complete responsibility for his own representation, this does not mean that standby counsel has no obligations or duties to the defendant when standby counsel has been appointed by the court. The *McDonald* court stated that a defendant possesses the right to have conflict-free standby counsel "because standby counsel must be (1) candid and forthcoming in providing technical information/advice, (2) able to fully represent the accused on a moment's notice, in the event termination of the defendant's self-representation is necessary, and (3) able to maintain attorney-client privilege." *McDonald*, 22 P.3d at 794-95.

¶32 The Washington Supreme Court upheld the appellate court's reversal of the defendant's conviction in *McDonald* holding that

13

when the trial court knows or should know of a conflict of interest between the defendant and standby counsel, *it must conduct an inquiry into the nature and extent of the conflict.* After such an inquiry, the court may remove standby counsel and then substitute or replace standby counsel, or take other appropriate action. *Failure to make an inquiry and take appropriate action constitutes reversible error and prejudice will be presumed.*

*McDonald*, 22 P.3d at 795 (emphasis added).

¶33 I agree with the Washington Supreme Court's holding in *McDonald* that when a trial court knows or should know of a conflict of interest between the defendant and standby counsel, the court must conduct an inquiry into the nature and extent of the conflict. Failure to make an inquiry and take appropriate action constitutes reversible error and prejudice should be presumed.

¶34 The Court states at ¶ 13 of the Opinion that "the central issue briefed by the parties, which we deem dispositive, is whether an actual conflict existed in this case." However, since the District Court did not hold an appropriate hearing on standby counsels' assertions that a conflict did exist, we do not have enough facts, in my view, to resolve this issue.

¶35 This Court has repeatedly stated that "[w]hen a defendant complains about ineffective assistance of appointed counsel and requests new counsel, a district court must make an 'adequate initial inquiry' as to whether defendant's allegations are 'seemingly substantial.' " *State v. Dethman*, 2010 MT 268, ¶ 16, 358 Mont. 384, 245 P.3d 30 (quoting *State v. Happel*, 2010 MT 200, ¶ 14, 357 Mont. 390, 240 P.3d 1016; *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, 955 P.2d 1371). An "adequate

14

initial inquiry" occurs when the district court "considers the defendant's factual complaints together with counsel's specific explanations and makes some sort of critical analysis of the complaint." *Dethman*, ¶ 16 (citing *Happel*, ¶ 14). During such an inquiry, the district court's duty is to determine "whether a conflict is so great as to result in a total lack of communication." *Dethman*, ¶ 16 (citing *State v. Hendershot*, 2007 MT 49, ¶ 24, 336 Mont. 164, 153 P.3d 619).

¶36 Furthermore, the Supreme Court noted that while, ordinarily, prejudice to the defendant must be shown with respect to deficient performance by counsel, there are certain instances where prejudice is presumed, such as "when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067. In such cases, prejudice is presumed because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067.

¶37 Moreover, in an earlier case, the Supreme Court found the following considerations persuasive:

> An attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. Finally, attorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.

*Holloway v. Arkansas*, 435 U.S. 475, 485-86, 98 S. Ct. 1173, 1179 (1978) (internal citations and quotation marks omitted).

15

¶38    The Supreme Court concluded in *Holloway* that because of the seriousness of a violation of a defendant's fundamental right to effective assistance of counsel, reversal of a defendant's conviction should be automatic in situations where counsel raised an issue of conflict of interest to the trial court. To that end, the Supreme Court stated that the right to have the assistance of counsel "is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Holloway*, 435 U.S. at 488, 98 S. Ct. at 1181. Thus, if a defendant's Sixth Amendment right to counsel is infringed, prejudice is presumed regardless of whether it was independently shown, and reversal is automatic. *Holloway*, 435 U.S. at 489, 98 S. Ct. at 1181 (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963); *Hamilton v. Alabama*, 368 U.S. 52, 82 S. Ct. 157 (1961); *White v. Maryland*, 373 U.S. 59, 83 S. Ct. 1050 (1963)).

¶39    One of the requirements for any counsel is that counsel must be able to maintain attorney-client privilege. That requirement should be no different for standby counsel. In the instant case, the Court states at ¶ 16 that "Longjaw questioned [Haygood] briefly and the record reveals no involvement by standby counsel regarding Haygood, nor is any such involvement asserted by Longjaw." Because the trial court did not inquire as to the conflict raised by standby counsel based on Haygood's testifying in this case, we have no way to know why standby counsel was not more involved in questioning Haygood. The possibility exists that standby counsel could not assist Longjaw with questioning

16

Haygood because of problems with attorney-client privilege regarding standby counsel's representation of Haygood.

¶40    In addition, the Court asserted at ¶ 17, that "[a]lthough a potential conflict may have presented here, we conclude that the circumstances did not progress to an actual conflict wherein standby counsel were required to make a choice to the detriment of Longjaw's interests."   Once again, because the trial court did not make an adequate inquiry into the *potential* conflict presented here, we have no way of knowing if an *actual* conflict existed.

¶41    Certain conflicts of interest are so basic that they cannot be accurately assessed after a trial, and prejudice should be presumed:

> [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.  It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client.  And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.

*St. Dennis*, ¶ 59 (Nelson, J., dissenting) (citing *Holloway*, 435 U.S. at 490-91, 98 S. Ct. at 1182).

¶42    In *St. Dennis*, this Court recognized that the OPD had established certain protocols to handle conflicts of interest between clients by utilizing different Regions of the OPD system to represent clients with conflicts of interest.  *St. Dennis*, ¶¶ 22-24.  However, as I pointed out in my dissenting opinion in *St. Dennis,* the OPD system is burdened with

17

significant flaws. *St. Dennis*, ¶ 75 (Nelson, J., dissenting); *see also Hendricks v. State,* 2006 MT 22, ¶¶ 21-39, 331 Mont. 47, 128 P.3d 1017 (Nelson, J., dissenting). Those flaws have appeared again in this case.

¶43    I would remand this case for a new trial on the charge of sexual intercourse without consent, and I dissent from our failure to do so.


                                    /S/ JAMES C. NELSON