FILED

05/14/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0571

DA 21-0571

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 99

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEFFREY ALLEN WESTFALL,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-20-277C
Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Carolyn Gibadlo, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Mardell Ployhar,
Assistant Attorney General, Helena, Montana

          Travis Ahner, Flathead County Attorney, Andrew C. Clegg, Deputy
County Attorney, Kalispell, Montana

Submitted on Briefs: December 20, 2023

Decided: May 14, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    Jeffrey Allen Westfall (Westfall) pled guilty in the Eleventh Judicial District Court, Flathead County, to attempted sexual assault and aggravated assault.  Westfall appeals.

¶2    We restate the issues on appeal as follows:

1. *Did Westfall waive his claim challenging the District Court's failure to order a fitness evaluation when he pled guilty?*

2. *Do Westfall's convictions for aggravated assault and attempted sexual assault violate double jeopardy?*

3. *Did the District Court err when it ordered Westfall to pay the costs of the trial and Presentence Investigation Report (PSI) without inquiring as to his ability to pay?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3    F.C., age sixty-nine, and her husband operate a motel and RV resort in Lakeside, Montana.  They sleep in bedrooms behind the motel office.  At around 12:23 a.m. on August 23, 2020, F.C. woke up to a phone call from a man requesting a room for the night.  Shortly thereafter, F.C. heard a knock at the front door of the motel.  She left the bedroom to answer it.  F.C. saw a man standing at the office door, later identified as Westfall, and opened the door to let him in.  The motel is monitored by security cameras which captured the events giving rise to this offense.  Westfall entered through the door and followed F.C. around to the back of the counter where he began pushing and punching her in the jaw.  F.C. fell to the floor and Westfall continued to hit her and removed her pants.  F.C. yelled for her husband, who awoke and began kicking Westfall and moving him towards the front door through which Westfall eventually fled.  As a result of the assault, F.C. sustained a broken jaw and bruising over her body.

2

¶4     The following day, Robyn Ockler, who had been staying in one of the motel rooms, failed to check out on time.  When asked by staff why she had not left, she explained that she was stranded because the man she was with left in the middle of the night with their car.  She identified the man as Westfall and law enforcement learned that he was currently on probation.  Law enforcement met with Westfall's probation officer, Jake Miller, and Miller viewed the security camera footage from the motel.  Miller confirmed that it was Westfall in the motel.  Westfall was subsequently apprehended but was admitted to a psychiatric hospital after he attempted suicide.

¶5     The State charged Westfall with attempted sexual intercourse without consent and aggravated assault.  Before trial began on April 19, 2021, the court conducted a hearing. Westfall repeatedly interrupted proceedings, argued with his attorney, Greg Rapkoch (Rapkoch), made his own objections, and refused to meet alone with Rapkoch.  As a result, Rapkoch requested a *Faretta*[1] hearing to determine if Westfall wanted to proceed pro se or be appointed new counsel.  The District Court ordered everyone but Westfall and Rapkoch to leave the courtroom and asked Westfall if he wanted Rapkoch to continue to represent him.  Westfall responded, "[y]es. Absolutely."  However, when the court inquired further by asking Westfall questions relevant to whether he could represent himself, Westfall replied, "I don't know if I can answer that, Your Honor."

¶6     The District Court attempted to proceed with the hearing, but Westfall continually interrupted the proceedings and asked, for example, that Rapkoch tell the court how many

---

[1] *Faretta v. Cal.*, 422 U.S. 806, 95 S. Ct. 2525 (1975), holds criminal defendants have a right to conduct their own defense.

3

days he had been lead attorney on his case. When Rapkoch informed the court that he had been lead counsel for about a week but managing attorney for the case since February, Westfall accused him of having a conflict of interest because Rapkoch's wife, also an attorney, had represented Westfall in the past. However, when Rapkoch asked if he wanted the hearing continued, Westfall responded, "[a]bsolutely not." Following this exchange the District Court allowed the prosecution back into the courtroom and the hearing continued. Immediately after reconvening, Westfall once again began interrupting the proceedings and the court had to call for another recess. On this occasion, Westfall said he did not have enough time to review information he had received from Rapkoch. However, this complaint was resolved in similar fashion by the court.

¶7 After reconvening, the court clerk began roll call of the jurors. Westfall interrupted again, informing the court that he wanted to represent himself. The District Court called for a recess and had the venire panel and prosecution step outside the courtroom. The District Court then asked if Westfall wanted to represent himself as he had just requested, but Westfall responded, "[y]our Honor, I'm not sure what I wish to do at this point." Westfall then accused Rapkoch of wanting him to be convicted. The District Court reminded Westfall that he had just stated in front of potential jurors that he wanted to represent himself and asked him again if that was what he wished. Westfall responded, "I'm not sure yet, Your Honor" followed by "I guess we'll have to see how the day goes." Westfall then said he had mental health issues that were not being addressed. The District Court had the prosecution return but kept the jurors outside of the courtroom. Rapkoch

4

requested a fitness determination to evaluate whether Westfall was fit to stand trial. Westfall interrupted the court, indicating "[his] anxiety level [wa]s through the roof." The State, however, maintained that Westfall was engaged in the proceedings, answered questions, and opined Westfall's latest request for a fitness determination was an attempt to delay proceedings. The District Court denied Westfall's request, agreeing that his outbursts and requests for an evaluation were a delay tactic. Westfall responded to the court's denial by screaming and repeatedly stating that he "d[idn't] understand what [was] going on." Rapkoch requested a continuance, which the District Court denied, and Westfall began banging on the counsel table.

¶8   Following a short recess, the court reconvened with the venire panel present. Westfall immediately interrupted the proceedings stating that the panel was too old. He requested another continuance, but the court informed him it had already made a ruling on that motion. Westfall then claimed he wanted to represent himself and the District Court called for another recess. Once again, the court asked Westfall if he wished to represent himself and Westfall responded that he really wanted a continuance. The District Court reminded Westfall that it had already denied this request and Westfall responded by saying his anxiety was high, his attorney was not prepared, and that he was not receiving a proper defense. After the court denied his request, Westfall reacted by repeatedly stating that he wanted a continuance. When the court would attempt to speak, Westfall would interrupt to say he wanted a continuance.

5

¶9 The court reconvened with the jury present and began voir dire. Westfall interrupted the proceeding to tell the jury that his attorney was unprepared. At this point, the District Court informed Westfall that it would remove him from the courtroom if he continued to have outbursts. Westfall continued to have outbursts. The District Court called for another recess and determined that Westfall would be placed in a room where he would be able to see and hear the proceedings but would be unable to interact with the jury. Voir dire continued and a jury was selected.[2]

¶10 After the parties completed opening statements, the victim, F.C., described the assault and the surveillance footage was played for the jury. Thereafter, the parties reached a plea agreement. The State agreed to amend the charge of attempted sexual intercourse without consent to attempted sexual assault and, in return for Westfall's guilty plea to aggravated assault and attempted sexual assault, the State would recommend a 50-year sentence to the Montana State Prison with a 15-year parole restriction. Westfall would be able to argue for any legal sentence. The State would seek designation of Westfall as a persistent felony offender (PFO). At Westfall's request, the agreement was made binding on the court. Westfall did not reserve his right to appeal any issues.

¶11 During the sentencing hearing, the State reminded the court that the plea agreement capped the State's recommendation to a 50-year sentence with a 15-year parole restriction. To make this sentence possible, the State recommended designating Westfall a PFO on only one of the two counts. Additionally, Westfall objected on double jeopardy grounds

---

[2] We observe that the District Court exhibited exemplary patience and skill in handling the multitude of issues raised by Westfall during the midst of his jury trial.

that the court could not enhance the penalty for attempted sexual assault with the same violent conduct underlying his aggravated assault. Finally, Westfall had previously objected to the imposition of certain fines and fees based on an inability to pay. The District Court followed the State's recommendation and sentenced Westfall to 20 years in prison with a 15-year parole restriction for the aggravated assault. The court sentenced Westfall to 50 years, with a 15-year parole restriction, for attempted sexual assault, to run concurrent to the aggravated assault sentence. Westfall was designated a PFO for his conviction of attempted sexual assault.

¶12 Westfall appeals.

## STANDARD OF REVIEW

¶13 Whether a defendant has waived a claim by pleading guilty is a legal determination which this Court reviews for correctness. *Skyline Consulting Grp. v. Mortensen Woodwork, Inc.*, 2022 MT 192, ¶ 7, 410 Mont. 230, 518 P.3d 462.

¶14 "Determinations regarding Montana's statutory double jeopardy protections under § 46-11-410, MCA, present questions of law that this Court reviews for correctness." *State v. Valenzuela*, 2021 MT 244, ¶ 7, 405 Mont. 409, 495 P.3d 1061 (citing *State v. Williams*, 2010 MT 58, ¶ 13, 355 Mont. 354, 228 P.3d 1127).

¶15 We review de novo whether a sentencing court "adhered to the applicable sentencing statute." *State v. Dowd*, 2023 MT 170, ¶ 6, 413 Mont. 245, 535 P.3d 645.

¶16 *1. Did Westfall waive his claim challenging the District Court's failure to order a fitness evaluation when he pled guilty?*

**DISCUSSION**

¶17   "Montana's long standing jurisprudence holds that 'where a defendant voluntarily and knowingly pleads guilty to an offense, the plea constitutes a waiver of all non-jurisdictional defects and defenses, including claims of constitutional rights violations which occurred prior to the plea.'" *State v. Watts*, 2016 MT 331, ¶ 9, 386 Mont. 8, 385 P.3d 960 (quoting *State v. Lindsey*, 2011 MT 46, ¶ 19, 359 Mont. 362, 249 P.3d 491). Once a defendant has pled guilty, they "may only attack the voluntary and intelligent character of the guilty plea and may not raise independent claims relating to prior deprivations of constitutional rights." *Watts*, ¶ 9 (citing *State v. Gordon*, 1999 MT 169, ¶ 23, 295 Mont. 183, 983 P.2d 377).

¶18   Westfall argues that the District Court violated his statutory and constitutional rights when it denied his request for a mental health evaluation and determined that he was fit to stand trial. Westfall maintains at the point he made a request for a fitness examination, the proceedings should have immediately stopped. Westfall relies on *State v. Bartlett* where we reversed Bartlett's conviction when the district court denied his request for a mental health evaluation. *Bartlett*, 271 Mont. 429, 434, 898 P.2d 98, 101 (1995). *Bartlett*, however, is inapposite to the situation here because Bartlett's conviction followed a jury trial and not a guilty plea. While Westfall's objection to the court's denial of his request for a fitness evaluation could be raised on appeal if the record and objection were adequately preserved, a voluntary guilty plea otherwise constitutes a waiver of all non-jurisdictional defects and defenses. *Watts*, ¶ 9.

8

¶19 Westfall also argues in his reply brief that he is challenging the District Court's finding that he had the ability to enter a plea voluntarily and knowingly. Prior to changing his plea, the court explained the rights Westfall was waiving, the terms of the agreement, and the maximum and minimum sentences that it could impose. Westfall indicated he understood the rights he was waiving and that he did not have any questions. Regarding Westfall's mental ability to enter a guilty plea, the following exchange occurred between Westfall and the District Court:

> District Court: And as of right now, do you feel clear-headed to enter this plea of guilty?
> Westfall: Yes, Your Honor.
> District Court: Do you believe that you're suffering today from manic depression?
> Westfall: A little bit, but not -- not enough to affect my cognitive decision here today.
> District Court: And the paranoia, are you suffering from that today?
> Westfall: Not today. Last night I was, but not today.
> District Court: Okay. And are you entering this plea voluntarily?
> Westfall: Yes, Your Honor.
> District Court: And you understand the maximum penalty the Court could impose?
> Westfall: I do, Your Honor.
> District Court: And you're waiving the rights that we went over?
> Westfall: Yes.

Based on this colloquy and consideration of the entire record, we conclude Westfall knowingly and voluntarily entered into this plea agreement. In fact, as the State correctly points out, Westfall was engaged in the entire proceeding and even successfully argued for the plea agreement to be made binding. Having heard the victim's testimony and seen the video surveillance presented to the jury, Westfall made a calculated and voluntary choice to change his plea and acquire the best agreement possible from the State. Accordingly,

Westfall waived his right to appeal the court's denial of his request for a fitness evaluation. The record does not support a conclusion that Westfall's plea was involuntary.

¶20    *2. Do Westfall's convictions for aggravated assault and attempted sexual assault violate double jeopardy?*

¶21    Westfall argues that because his convictions for aggravated assault and attempted sexual assault relied on the same bodily injury, his right against double jeopardy, protected by Montana's Double Jeopardy Clause, was violated.[3]

¶22    Both the Fifth Amendment to the United States Constitution and Article II, Section 25, of the Montana Constitution ensure that no person shall be twice placed in jeopardy for the same offense.  U.S. Const. amend. V ("[n]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); Mont. Const. art. II, § 25 ("[n]o person shall be again put in jeopardy for the same offense previously tried in any jurisdiction.").  "Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution." *State v. Guillaume*, 1999 MT 29, ¶ 13, 293 Mont. 224, 975 P.2d 312.  "The prohibition against double jeopardy 'was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *Valenzuela*, ¶ 11 (quoting *Green v. United States*, 355 U.S. 184, 187, 78 S. Ct. 221, 223 (1957)).

---

[3] While Westfall raised his double jeopardy challenge at the time he was sentenced, he did not reserve his right to appeal this ground.  However, in *State v. Cech*, 2007 MT 184, 338 Mont. 330, 167 P.3d 389, we held that a double jeopardy challenge was not waived when the court, at the time it accepts the guilty plea, has a sufficient record to determine whether the government lacked the power to bring the charges at issue due to constitutional prohibitions against double jeopardy. *See also Stilson v. State*, 278 Mont. 20, 924 P.2d 238 (1996).

¶23 Any inquiry into a double jeopardy challenge must begin with an examination of the statutory offenses involved. In determining whether a defendant can be charged and convicted of violating two statutes for the same act or transaction under Article II, Section 25, this Court has adopted the "same elements" test prescribed by in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180 (1932):

> Each of the offenses created [must] require[] proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. See *Valenzuela*, ¶ 14. The *Blockburger* test is a test of statutory construction to determine whether the legislature intended the same conduct to be punishable under two criminal provisions. *Valenzuela*, ¶ 14. "The dispositive question is whether the legislature intended to provide for multiple punishments. The *Blockburger* test is merely one rule of statutory construction to aid in the determination of legislative intent. The ultimate question remains one of legislative intent." *State v. Close*, 191 Mont. 229, 246, 623 P.2d 940, 949 (1981) (citing *Whalen v. United States*, 445 U.S. 684, 100 S. Ct. 1432 (1980)). *See also Valenzuela*, ¶¶ 11-12.[4]

¶24 Westfall was convicted of attempted sexual assault in violation of §§ 45-4-103(1) and 45-5-502, MCA. "A person commits the offense of attempt when, with the purpose to

---

[4] Montana affords additional statutory protections against double jeopardy through §§ 46-11-410 and -503, MCA, which address whether the same transaction may establish multiple charges or the commission of more than one offense. However, Westfall does not raise a statutory double jeopardy challenge. Hence, we limit our discussion to Article II, Section 25, of the Montana Constitution noting that the statutes codify constitutional double jeopardy principles.

commit a specific offense, the person does any act toward the commission of that offense." Section 45-4-103(1), MCA. Here, the specific offense is sexual assault. Pursuant to § 45-5-502(1), MCA, "[a] person who knowingly subjects another person to any sexual contact without consent commits the offense of sexual assault." Hence, for purposes of a *Blockburger* analysis, the elements of sexual assault and thus the definition of the charged offense are:

(1) knowingly

(2) subjects another person to any sexual contact

(3) without consent.

Sexual contact is defined as "touching of the sexual or other intimate parts of the person of another . . . to arouse or gratify the sexual response or desire of either party." Section 45-2-101(67), MCA.

¶25 The remaining subsections of § 45-5-502, MCA, address the *penalty* that may be imposed based on the presence of certain factors. Relevant here, § 45-5-502(3), MCA, provides that "if the offender inflicts bodily injury upon anyone in the course of committing sexual assault . . . [,]" a term of imprisonment may be imposed of not less than 4 years or more than 100 years. Importantly, § 46-1-401(3), MCA, which addresses penalty enhancements, tells us:

> An enhancing act, omission, or fact is an act, omission, or fact, whether stated in the statute defining the charged offense or stated in another statute, that is not included in the statutory definition of the elements of the charged offense and that allows or requires a sentencing court to add to, as provided by statute, a penalty provided by statute for the charged offense or to impose the

12

death penalty instead of a statutory incarceration period provided by statute for the charged offense.

Construing these statutes together, we have little difficulty concluding the statutory definition for "sexual assault" is contained in § 45-5-502(1), MCA, and does not require that the assault result in bodily injury. "Bodily injury," therefore, is a *sentence enhancement* and not an *element* of the charged offense of sexual assault. As a sentence enhancement, it does not factor into and is irrelevant to a *Blockburger* analysis.

¶26 Turning to the statutory elements for aggravated assault, § 45-5-202(1), MCA, requires the assault be:

(1) purposely or knowingly

(2) causes serious bodily injury to another.

Bodily injury is defined in § 45-2-101(5), MCA, as "physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." However, the "bodily injury" required for a conviction of aggravated assault requires the injury be "serious," which is defined in § 45-2-101(66)(a), MCA, as bodily injury that:

(i) creates a substantial risk of death;
(ii) causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or
(iii) at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ.

¶27 The *Blockburger* test analyzes the statutory elements for each offense, rather than the actual evidence presented at trial. *Valenzuela*, ¶ 14. Applying the *Blockburger* test,

13

we must determine whether the statutory elements for either offense requires proof of an additional element not otherwise contained in the other.

¶28    For the offense of sexual assault, there exists an element not otherwise contained in aggravated assault; that is, there must have been "sexual contact." "'Sexual contact' means touching of the sexual or other intimate parts of the person of another . . . to arouse or gratify the sexual response or desire of either party." Section 45-2-101(67), MCA. In contrast, the offense of aggravated assault does not require sexual contact and aggravated assault is committed only when the assault inflicts "serious bodily injury." Further, the statutory elements of sexual assault do not require that any injury, no matter the severity, occur at all. Accordingly, the two offenses do not share or have in common two elements—sexual contact and serious bodily injury—and therefore each has an additional element not contained in the other. The offense of attempted sexual assault requires sexual contact that was made without consent; the offense of aggravated assault requires serious bodily injury. We conclude that the elements of each offense demonstrate that neither is included in the other offense.

¶29    Although acknowledging that bodily injury is an enhancing factor for sexual assault, Westfall maintains that the question is whether the State may enhance Westfall's sexual assault penalty for causing injury after it already convicted and punished him for causing bodily injury in the aggravated assault conviction. Westfall argues *Blockburger* does not address sentence enhancements and it does not apply to this case. We agree *Blockburger* does not address sentencing enhancements but we disagree that *Blockburger* does not apply

14

to the double jeopardy analysis in this case. We must look to the underlying elements of each offense to assess a claimed double jeopardy violation and apply *Blockburger* to the offenses' elements. Here, the underlying elements do not include the sentencing enhancement imposed as a penalty for sexual assault.

¶30 As support for his argument, Westfall relies on *Guillaume*. In *Guillaume*, we held that a person convicted of assault which was enhanced to a felony because a weapon was used, while also being convicted under a weapon enhancement statute, violated double jeopardy. *Guillaume*, ¶ 16. However, in *Guillaume* the defendant was enhanced twice for the use of a weapon. His sentence was enhanced from a misdemeanor to felony assault and was enhanced based on the weapon enhancement statute. The same element was used twice to enhance his sentence. Here, bodily injury is an *enhancing* factor, not an element, of the offense of sexual assault; it is an element of the offense of aggravated assault. Westfall's sentence for attempted sexual assault was properly enhanced because he inflicted bodily injury during its commission. Westfall was separately charged for the severity of the injury through the aggravated assault statute. Westfall was convicted of two separate offenses, with different elements. That one of those offenses contained a sentencing enhancement does not mean, under these circumstances, that there was a double jeopardy violation.

¶31 The Legislature created two separate offenses for sexual assault and aggravated assault. The Legislature increased the penalty for sexual assault when bodily injury is inflicted, but the offense nonetheless has the same elements as a sexual assault. The

15

Legislature created an offense of aggravated assault with an element of serious bodily injury that is not included in a sexual assault offense. Even accepting, for purposes of argument, that there was a single act of violence—a fractured jaw—relied on to support both convictions (which the evidence refutes), a single act can be used twice to increase a sentence if neither of the two offenses committed are included in the other.

¶32 Based on the foregoing, we conclude that Westfall's conviction for attempted sexual assault and aggravated assault do not violate Montana's constitutional prohibition against double jeopardy.

¶33 *3. Did the District Court err when it ordered Westfall to pay the costs of the trial and PSI without inquiring as to his ability to pay?*

¶34 Westfall argues that during sentencing, the District Court erred when it imposed $5,228.61 in trial costs and a $50 PSI fee without inquiring as to Westfall's ability to pay. Section 46-18-232(2), MCA (2019), states that:

> The court may not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take into account the financial resources of the defendant, the future ability of the defendant to pay costs, and the nature of the burden that payment of costs will impose.

Concerning the cost of a PSI, a "defendant shall pay to the department of corrections a $50 fee at the time that the report is completed, unless the court determines that the defendant is not able to pay the fee within a reasonable time." Section 46-18-111(3), MCA.

¶35 The State concedes that during sentencing, the District Court failed to address Westfall's ability to pay when it ordered him to pay $5,228.61 for the costs of the jury and

16

witness, as well as the $50 PSI fee. Importantly, however, Westfall *does* allege that the imposition of jury costs undermines his fundamental right to a jury trial, which is a different challenge than imposing costs on an indigent defendant. This contention is conveniently avoided by the State's concession. While it would be premature to address such a challenge because Westfall may not be assessed jury costs following an ability to pay inquiry, we nonetheless note it has been raised and that it resonates from a different basis than imposing fines, fees, and costs on an indigent defendant.

¶36    We remand to the District Court for a determination of Westfall's ability to pay the financial obligations imposed.

**CONCLUSION**

¶37    We conclude Westfall waived his right on appeal to challenge all non-jurisdictional defects and defenses when he voluntarily entered a guilty plea. We conclude Westfall's convictions for attempted sexual assault and aggravated assault, which were presumably based on the same bodily injury, do not violate Montana's prohibition against double jeopardy. Finally, we conclude the District Court failed to conduct an ability to pay inquiry prior to imposing trial costs. We, therefore, remand for a determination of Westfall's ability to pay financial obligations imposed by the court.

¶38    Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ LAURIE McKINNON

17

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE